## In re CHILDS CO.

## In re LEASES ON 1485 AND 1485½ BROADWAY, NEW YORK CITY.

District Court, S. D. New York.

Sept. 18, 1944.

Bleakley, Platt & Walker, of New York City (Roswell P. C. May, of New York City, of counsel), for Judith Evelyn Chamberlain and Mary Evelyn Chamberlain Leonard.

Thomas G. Barnes, of Ossining, N. Y. (David W. Kahn, of New York City, of counsel), for Ruth Chamberlain McEntree and Ruth Chamberlain Veach.

Montgomery, Grace & Derby, of New York City (J. Seymour Montgomery, Jr., of New York City, of counsel), for Franklin M. Doan.

Lorenz, Finn & Lorenz, of New York City (Joseph Lorenz and James J. Geraghty, both of New York City, of counsel), for John F. X. Finn, trustee.

CONGER, District Judge.

There are two petitioners here asking for relief with respect to two properties now occupied and used by the debtor. While there are two proceedings they were heard and argued together, and one opinion will suffice for both.

The two properties involved are 1485 and 1485½ Broadway, New York City. The debtor occupied and the Trustee, hereinafter referred to, now occupies the two said adjoining premises in connection with an adjoining property, which it owns on 43rd Street, as a single unit for the operation of a single restaurant. Certain portions of the demised premises have been sublet but that fact is not involved here.

On September, 1921, the debtor leased the premises 1485½ Broadway in consideration of certain specified rentals. Said lease, designated as the Doan lease, was to expire on December 12, 1947, but the term of the lease was extended so that it now expires on April 1, 1948.

On August 31, 1925, the debtor leased the premises 1485 Broadway for a term of years in consideration of certain specified rentals. By its terms, this lease will expire on April 1, 1948. This lease will be designated as the Chamberlain lease.

On August 26, 1943, the Childs Company filed in this court a petition for its reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The petition was approved by me on the same date and at the same time I appointed John F. X. Finn Trustee of the debtor and he is now the duly qualified and acting Trustee of the said debtor.

Petitioners herein, the Landlords of the respective demised premises, ask for the same relief:

(1) That it be adjudged that the Trustee has disaffirmed the said leases;

(2) That leave be given to institute and prosecute summary proceedings in the Municipal Court against the debtor, the Trustee and all subtenants of the debtor and the Trustee in possession;

(3) Such further and other relief as to the Court seems just and proper.

■■■■ I shall first take up one of the contentions made by Petitioner Franklin M. Doan. There is a clause in the Doan lease which is not in the Chamberlain lease. It is as follows:

"And also that the said lessee, its successors and assigns, shall not nor will at any time or times hereafter, during the term hereby granted, let or underlet the said premises, except the upper floors and basement thereof, nor mortgage, assign, transfer or make over the same or this present lease, or any part of the said term therein to any person or persons whomsoever, nor to any assignee for the benefit of creditors, without the written consent of the said lessor, his successor, successors or assigns, and that the granting, giving or waiving of any one or more of such consents, shall not render unnecessary any subsequent consent or consents."

The argument put forth is that when the Childs Company filed its petition for reorganization it violated the terms of the aforesaid covenant of the lease which gave to the landlord an option to cancel and terminate the lease upon 20 days' notice.

The lease did contain the further provision that upon the breach of any covenant in the lease by the tenant, the lease and the estate thereby granted ceased and terminated, provided the lessor shall have given the lessee 20 days written notice of the act or failure to act constituting the breach and provided the lessee shall not within the said 20 days have corrected the same.

Accordingly and on December 22, 1943, the Landlord, Mr. Doan, caused a notice to be served upon the Trustee and the debtor, advising them that the debtor by filing the petition in reorganization under Chapter X in Bankruptcy had breached one of the covenants of the lease and that the

lease would be terminated unless the breach was corrected within 20 days.

The clause set forth is one found commonly in leases. It prohibits the voluntary assignments of a lease by the lessee without the consent of the lessor. It is to be distinguished from those changes in interest or ownership under a lease which is effected by operation of law. The change in title from the debtor to the Trustee by the filing of the petition for reorganization herein was not a voluntary assignment but was an assignment by operation of law. It is well settled under the cases that an involuntary assignment by operation of law, as we have here, does not constitute a breach of a covenant in a lease against an assignment thereof by the tenant without the consent of the landlord. See Gazlay v. Williams, Trustee, 210 U.S. 41, 28 S.Ct. 687, 52 L.Ed. 950, 14 L.R.A.,N.S., 1199; In re Wil-low Cafeterias, 2 Cir., 111 F.2d 83; Francis v. Ferguson, 246 N.Y. 516, 159 N.E. 416, 55 A. L.R. 982.

A clause covering such a contingency could have been drafted by the parties but, being in the nature of a forfeiture, the intent of the parties would have to be clearly and unequivocally expressed. The prohibition against an assignment to an "assignee for the benefit of creditors" could hardly be construed to include a voluntary petition filed by the debtor in a Chapter X proceeding as the result of which a Trustee for the debtor was appointed. I hold against petitioner on this point.

The next and more serious issue raised by both petitioners, is that the leases in question have been disaffirmed by the Trustee, because he failed to affirm or reject them within the sixty day period provided for in § 70, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. b. The Trustee neither attempted to assume or reject the leases within 60 days after the approval of the petition herein. § 70, sub. b, generally provides that the Trustee within 60 days after the adjudication shall assume or reject execution contracts, including unexpired leases of real property. Any such contract or lease not so rejected or assumed by the Trustee within such period shall be deemed to have been rejected by the Trustee.

It should be noted at this time, for the purpose of the proceeding, "adjudication" and the date of the approval of a petition filed under Chapter X are equivalent.

§ 70, sub. b, is part of Chapter VII of the Bankruptcy Act and deals generally with bankrupt estates. Chapter X, however, deals solely with corporate reorganizations. The various sections included within Chapter X apply exclusively to such proceedings. However, § 102 of the Bankruptcy Act (a part of Chapter X) provides that Chapters I to VII of the Bankruptcy Act shall, insofar as they are not inconsistent or in conflict with the provisions of Chapter X apply in proceedings under Chapter X.

The question we have here is whether § 70, sub. b, read in conjunction with § 102, governs and controls the rejection or assumption of unexpired leases by a trustee appointed pursuant to the provisions of Chapter X.

I agree with petitioners "that unless the Court finds the provisions of § 70, sub. b to be inconsistent or in conflict with Chapter X it must by virtue of § 102 apply the said sections to the instant case."

The Trustee, however, contends that § 70, sub. b does not apply; that its provisions are inconsistent with and in conflict with Chapter X provisions, particularly § 116(1) and § 202.

The applicable part of § 116 reads as follows:

"Sec. 116. Upon the approval of a petition, the judge may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon him and the court—

"(1) permit the rejection of executory contracts of the debtor, except contracts in the public authority, upon notice to the parties to such contracts and to such other parties in interest as the judge may designate."

The pertinent part of § 202 reads as follows:

"In case an executory contract shall be rejected pursuant to the provisions of a plan or to the permission of the court given in a proceeding under this chapter, or shall have been rejected by a trustee or receiver in bankruptcy or receiver in equity in a prior pending proceeding, any person injured by such rejection shall, for the purposes of this chapter and of the plan, its acceptance and confirmation, be deemed a creditor. The claim of the landlord for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant con-

tained in such lease shall be provable, but shall be limited to an amount not to exceed the rent, without acceleration, reserved by such lease for the three years next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after the filing of the petition, plus unpaid accrued rent, without acceleration, up to such date of surrender or reentry."

The question here presented is novel and new. Since the enactment of the Chandler Act (1938) this point has not been passed on. Counsel herein have not furnished me with any precedent nor have I been able to find any.

§ 70, sub. b, is new. It was part of the Chandler Act enacted in 1938. Prior to that act there was no express authority given to Trustees to assume or reject executory contracts.

§ 116(1) while enacted in 1938 was not really new; a similar provision was to be found in the former reorganization provisions of the Bankruptcy Act, § 77B, 11 U.S.C.A. § 207.

There is another section of Chapter X which has some relevancy to the question involved here. § 216 and § 216(4) which read as follows:

"Sec. 216. A plan of reorganization under this chapter— * * * (4) may provide for the rejection of any executory contract except contracts in the public authority;"

Both Sections 116(1) and 216(4) of the present law had their counterpart in the old 77B as follows:

"Sec. 77(b) (6). A plan of reorganization within the meaning of this section * * * (6) may reject contracts of the debtor which are executory in whole or in part, including unexpired leases except contracts in the public authority."

"Sec. 77B (c) (5) * * * the judge * * * (5) may direct the rejection of contracts of the debtor executory in whole or in part."

Under § 77B, and particularly § 77B (c) (5), the rule was laid down that a Trustee in a reorganization proceeding under § 77B had no such authority to adopt or reject a lease without authorization from the court; that power to reject or assume a lease was not lodged in the debtor nor in the Trustee but devolved exclusively upon the judge. In re Cheney Bros., D.C.,

12 F.Supp. 605; Gerdes on Corporate Reorganizations page 1137, section 694 Compare In re Walker, 2 Cir., 93 F.2d 281, 283.

With respect to a proper interpretation of § 116(1) of Chapter X, one should look to the congressional intent in enacting this section into the new Chandler Act, the C.C.H. Bankruptcy Service, paragraph 8051.001, pp. 8026-27, citing the report of the Senate Committee on the Judiciary, May 27, 1938, p. 24; states:

"Rejection of executory contracts.—Subsection (1) restates a power over the rejection of executory contracts, except contracts in the public authority, formerly given to the judge by section 77B (b) (6). The requirement of notice, made express in subsection (1), may include notice to other than the parties to the contract, including, for example, protective committees and indenture trustees."

In paragraph 8051.002, said service, referring to the Senate amendment to § 116 (1), states:

"Senate amendment to § 116(1).—As the Chandler Act passed the House of Representatives no exception was made in the case of contracts in the public authority. However, the Senate saw fit to reinsert this provision of section 77B (b) into the law."

This legislative background of the enactment of § 116(1) evidences the obvious fact that Congress by virtue of § 116(1) was merely restating the provisions of the predecessor § 77B (b) (6). I see no reason to construe § 116(1) any differently. I think the same construction is clearly indicated.

Giving § 70, sub. b, the interpretation contended by petitioners, we find very clearly a conflict; one section (70, sub. b) giving the Trustee authority, with a time limitation, to assume or reject a lease, in fact making it mandatory for him to do so; the other, § 116(1), giving the judge the authority without any time limitation. Assume for a moment that the interpretation of § 70, sub. b, as claimed by Petitioners is correct, we would have this situation, if the trustee had taken no action regarding a lease within 60 days after the filing of a petition under Chapter X, the judge would be foreclosed from any action on his part.

One other situation that might occur leads me to believe that Petitioners are not correct.

Leases may be rejected pursuant to the plan of reorganization. It is well recognized that in the vast majority of reorganizations, the actual plan is not approved within 60 days after the approval of the petition. Usually a much greater time elapses. If Petitioners are correct, then if the Trustee has failed to reject a lease within the 60 days, it may not be rejected by the plan after said period.

I am all the more convinced of the correctness of the Trustee's contention herein when I read § 202 in connection with § 116(1).

It would seem that under § 202 one whose lease has been rejected by the Trustee without court authority might have no provable claim. § 202 defines a creditor of this type as one whose lease has been rejected "pursuant to the provisions of a plan or to the permission of the court given in a proceeding under this chapter" (Chapter X). The next sentence of § 202 then states the rule of damage to landlords whose leases have been so rejected, i. e., by the plan or by the Court.

If a Trustee under Chapter X has the authority to reject leases without authority of the Court, we would have this peculiar situation. A landlord whose lease had been so rejected would apparently be without remedy as to damage. Certainly § 202 does not give it to him.

■ I am convinced that the provisions of § 70, sub. b, are inconsistent and in conflict with the provisions of Sections 116(1) and 202, and, therefore, may not be considered in any way as governing the machinery for the rejection of leases by a Trustee in a Chapter X proceeding.

I have read a number of text books on this subject. I have found none that disagree with me but I have found several which do agree with me. See Collier on Bankruptcy, 14th Edition, Vol. 7, page 605, also Volume 4, note 30, page 1233. The last citation is so pertinent and apropos that I feel I should quote it:

"Compare also Sec. 116(1) dealing with the judge's power to permit rejection of contracts in corporate reorganizations under Chapter X. The difference between Sec. 116(1) and Sec. 70, sub. b, probably lies in the fact that corporate reorganization contemplates a continuance of the debtor's affairs and eventual rehabilitation. Hence, rejection of an executory contract assumes a more important aspect in light of future events. Ordinary bankruptcy, on the other hand, contemplates only inevitable liquidation insofar as the bankrupt is concerned."

See also Remington on Bankruptcy Vol. 10, Section 4413, pages 310 et seq.

Petitioners further claim that from the course of conduct of the Trustee, and statements made by the Attorney for the Trustee, they were justified in believing that the Trustee had rejected the leases and relying upon that they entered into a new lease of the premises which lease is to commence when possession may be given.

■ This third and last contention of petitioners herein is that the Trustee by his conduct and by reason of statements of his attorney is either estopped from affirming or is deemed to have disaffirmed the leases. This contention arises out of negotiations between the Trustee and petitioners concerning the renewal or assumption of the leases by the Trustee. Both parties acted through attorneys.

I am satisfied that petitioners are legally wrong. My finding as to the authority of the Trustee to reject a lease, without the authority of the Court, seems to me renders this last issue more or less moot.

The Trustee and the landlord are both interested in the lease. Each had equal right and duty to bring the matter to Court. In as much as the Trustee did not have the power to reject a lease, I doubt very much that his acts and declarations would have the effect of rejection.

The Trustee is in possession, but his possession is the possession of the Court.

In the final analysis it is the Court who has the last say. It is the duty of the Court to say whether or not a lease should be rejected or assumed by the Trustee. The Court might very well do this in the face of a formal rejection by the Trustee. See Gerdes on Corporate Organization, § 694, page 1137.

■ I also find against petitioners from a factual standpoint. The facts are all concerned with the negotiations for the assumption of the leases. The Trustee was apparently endeavoring to assume the leases but at a modified rental. The landlords were apparently not willing to accede. I do not propose to discuss the facts at any length. There is no real dispute as to what was said.

Petitioners rely mainly on the statements made by the attorneys for the Trustee at a conference held on December 7, 1943. At this conference all of the parties to this controversy were represented. The conference was held for the purpose of coming to some conclusion regarding the leases. The income of the restaurant conducted by the debtor on the premises was discussed. The attorney for the Trustee stated that the operations of the restaurant were resulting in a profit but not sufficient to justify paying the rent called for by the modified leases and that he did not feel that the Trustee should affirm either lease. The attorney for the Trustee was then asked to make an offer. This he did and the offer was refused. The attorney for the Trustee then stated that he would recommend the rejection of the leases if the rents fixed therein by the modified leases were insisted on by the landlords. The attorney for one of the petitioners then stated that his client might find it necessary to make a motion to reject or affirm the lease and the attorney for the Trustee stated that if such papers were served he would undoubtedly move for leave to disaffirm the lease. The above statement of fact is substantially petitioners' version of what occurred. In substance it is admitted by the attorney for the Trustee.

I can't believe from the above that petitioners were justified in coming to the conclusion that the Trustee had rejected the leases. The parties were apparently sparring. They certainly were bargaining and, it would seem at arm's length.

It would seem that the Trustee had not definitely rejected the leases because at another conference (December 29, 1943) the Trustee raised his offer. This offer was made to only one of the petitioners and concerning only one property but the other petitioner had knowledge of it.

With this renewal of negotiations, one of the petitioners was certainly on notice that the Trustee was still interested and was not rejecting the lease. This should have been notice to the other petitioner too because the two premises were used as one unit.

The attorney for the Trustee insists that this offer has never been accepted or rejected. He states in an affidavit that the attorney for the petitioner involved stated he would get in touch with his client to get his answer. The attorney for the Trustee further states he has never received the answer. I have examined the affidavits carefully. I do not find this statement contradicted.

Considering the above facts I feel that petitioners were not justified in coming to the conclusion that the Trustee had rejected the leases. There had been no formal rejection by the Trustee. The facts relied upon are not strong enough for me to say that the Trustee is estopped from coming to Court and asking authority to assume the leases.

In coming to this conclusion I am persuaded greatly by the fact that petitioners could at any time have come to Court and asked to have the leases rejected. They did not have to wait for the Trustee to move.

An unfortunate situation has arisen between the Trustee and petitioners; one that could have been obviated by a little more candor on either or both sides. It is quite apparent that the parties were dealing at arm's length. The Trustee was zealous in his effort to secure the leases as cheaply as he could, and petitioners apparently were not too enthusiastic to have the leases assumed by the Trustee, but were more interested in getting a new lease at an advanced figure. At any rate I have come to the conclusion that under all the circumstances that petitioners were not justified in believing that the Trustee had rejected the leases. I, therefore, deny the petition of the landlords.

The Trustee has petitioned for permission to assume the leases. I am of the opinion that it will be to the advantage of the estate of the debtor to assume these leases as petitioned for by the Trustee.

Petitions of Trustee granted.

Submit order on five days' notice.