**Larry T. MILLS, Appellant and Cross-Appellee,**

v.

**R. A. GILBERT, Trustee, Appellee and Cross-Appellant.**

**Bankruptcy No. C–81–723–G.**

United States District Court,
M. D. North Carolina,
Greensboro Division.

Aug. 3, 1982.

---

Walter Rand, Greensboro, N. C., for appellant and cross-appellee.

C. Edwin Allman, William R. Sage, Winston-Salem, N. C., for appellee and cross-appellant.

## MEMORANDUM OPINION

ERWIN, District Judge.

This case is before the court upon cross-appeals from an order entered by the bankruptcy court on August 19, 1981. The order compromised and adjusted a proof of claim filed by Larry T. Mills, appellant and cross-appellee. Mr. Mills' claim was based on an employment contract entered into by him and an official of Washington Group, Inc. ("Washington Group") prior to that company's filing of a petition of reorganization pursuant to Chapter X of the Bankruptcy Act, 11 U.S.C. §§ 501—676.

Larry T. Mills had been originally employed by Washington Group in October 1973 as the general manager of the Washington Mills Weaving Division in Fries, Virginia. In December 1976, this division was sold to Riegel Textiles. Mills continued to

work for Riegel for about six months. On May 15, 1977, he rejoined Washington Group in Winston-Salem, North Carolina.

On May 12, 1977, Mills and Washington Group entered into the employment contract around which this appeal revolves. That contract called generally for a base salary of $55,000 per year with an increase to $60,000 after approximately six months, incentive pay, qualified stock options, and an automobile.[1] The contract contained a severance pay clause which provided that "[i]n the event that the company shall terminate your employment, you shall be entitled to one year's annual base salary as severance pay, payable over the year following termination in the same installments as your base salary was paid you prior to termination."

Within several weeks after coming to work for Washington Group, Mills was promoted from Vice-President of Apparel Manufacturing to Executive Vice-President in charge of all textile manufacturing. He was also elected to the Board of Directors of the company. It was about this time that Mills learned that Washington Group was filing a petition for reorganization pursuant to Chapter X of the Bankruptcy Act. The petition for reorganization was filed on June 20, 1977. R. A. Gilbert was appointed as trustee on the same day.

Mr. Mills continued to work for Washington Group under the direction of R. A. Gilbert as trustee. On July 14, 1977, the bankruptcy court entered an order authorizing the trustee to compensate officers of the debtor pursuant to Section 191 of the Act.[2] Under this order, Mr. Gilbert was authorized to employ Mr. Mills at a rate of $4,584.00 per month.

On July 27, 1978, Mr. Mills was asked to resign by Mr. Gilbert. Thereafter, Mr. Mills submitted a letter of resignation on July 29, 1978. Mr. Mills was to be paid three months' severance pay.

Mr. Mills submitted a proof of claim on July 29, 1978. The claim was unsecured

---

1. The exact provisions of the contract read as follows:

    1. Effective May 15, 1977 the company will employ you as Vice President of Apparel Manufacturing. Your primary responsibilities will be given to you in writing at a later date.

    2. Your employment will continue through May 15, 1978. Thereafter, you or the Company may terminate your employment on not less than 60 days prior written notice of termination.

    3. Your annual base salary during your employment will be $55,000, to be paid monthly. In addition to annual base salary, you will be entitled to annual incentive compensation equal to ½ of 1% of the company's annual consolidated pretax operating profits excluding gains and losses on the sale of fixed assets for each fiscal year during which you are employed. Incentive compensation will be paid promptly after ascertainment and certification of results of operations for the year in question. In the event that the company shall terminate your employment, you shall be entitled to one year's annual base salary as severance pay, payable over the year following termination in the same installments as your base salary was paid you prior to termination. Upon termination you will also be entitled to incentive compensation on the same basis as that set forth above, except that the amount of incentive compensation to which you are entitled will

be determined on the basis of unaudited results of operations from the beginning of the fiscal year in which your employment is terminated through the end of the quarter ending nearest to the date of termination.

    4. During fiscal 1977, the company will grant you qualified stock options under its 1969 Qualified Stock Option Plan to purchase 10,000 shares of Common Stock.

    5. During your employment, you will be entitled to all the perquisites of office to which executives holding offices of comparable level within the company are entitled.

    6. You will be entitled to profit sharing based on the earnings the last six months if [sic] fiscal 1977.

    7. Your base pay will be increased to $60,000 per year beginning November 1, 1977.

    8. The company will pay your moving expenses from Fries, Virginia to Winston-Salem, North Carolina.

    9. The company will provide an automobile for company use and will pay all expenses related thereto.

2. Section 191 provides that: "A trustee or debtor in possession may employ officers of the debtor at rates of compensation to be approved by the court. No person shall become an officer or director of the debtor, to fill a vacancy or otherwise, without the prior approval of the court."

and in the amount of $64,583.26. It was later amended to seek $83,244.00. The amended claim took into account the three months' severance pay which had been accorded to Mr. Mills by the trustee, and in addition, sought priority status. The major item in both claims was Mr. Mills' contention that he was entitled to one year's severance pay in keeping with his interpretation of the employment contract. The claim also encompassed other items which had been included in the contract.

On April 24, 1981, the trustee filed an objection to Mills' claim. After a hearing on June 19, 1981 where testimony from both sides was heard, the bankruptcy court issued the order which is the subject of this appeal.

The issue which must be resolved at the outset is whether Larry T. Mills' employment contract was rejected or assumed by the trustee. The transcript of the hearing before the bankruptcy court, the briefs submitted to this court, and the oral arguments before this court indicate that the trustee did not adhere to the terms of the contract in a consistent fashion. The bankruptcy court found that the trustee was prevented from adopting the contract, but proceeded to utilize contract terms to some degree in adjusting Mills' claim. As it is this court's opinion that the employment contract was *not* rejected by the trustee, and that therefore its terms are essential to the resolution of this case, we proceed to a discussion of the case law surrounding assumption and rejection of executory contracts.

There is nothing in the record before this court which would indicate that the employment contract entered into by Mr. Mills and Washington Group was ever addressed in a formal fashion after the petition for reorganization was filed. Mills continued to work for the company, giving this court the impression that as far as he knew, the provisions of the contract remained in effect. Certainly, R. A. Gilbert, the trustee, was aware of the contract's existence.[3] Mr. Gilbert made no attempt, however, to reject or assume the contract. He acknowledged this fact.[4]

Several sections of the Bankruptcy Act speak to the issue of rejection of executory contracts.[5] Section 70(b) of the Act provides in pertinent part that:

The trustee shall assume or reject an executory contract, including an unexpired lease of real property, within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later, but the court may for cause shown extend or reduce the time. Any such contract or lease not assumed or rejected within that time shall be deemed to be rejected. If a trustee is not appointed, any such contract or lease shall be deemed to be rejected within thirty days after the date of the order directing that a trustee be not appointed. A trustee shall file, within sixty days after adjudication or within thirty days after he has qualified, whichever is later, unless the court for cause shown extends or reduces the time, a statement under oath showing which, if any, of the contracts of the bankrupt are executory in whole or in part, including unexpired leases of real property, and which, if any, have been rejected by the trustee.

A reading of this provision leads to the conclusion that as the trustee here did not

---

3. Mills testified at the hearing on the trustee's objection to his proof of claim that the trustee had control over all the contracts. Transcript of Hearing on Trustee's Objection to Claim of Larry T. Mills, June 19, 1981, p. 17 (Transcript). The testimony was not contradicted. In addition, while the trustee was testifying about his dissatisfaction with Mills' performance, he indicated that he showed his dissatisfaction by withholding an expected $5,000 raise, which was a term of the contract. Transcript, pp. 71–72.

4. Transcript, p. 85. The trustee testified that he did not think it was required.

5. The issue of whether the employment contract was in fact an executory contract was not addressed by the bankruptcy court. This court is of the opinion that the contract was executory, and will proceed on that basis.

specifically assume Mr. Mills' employment contract, it was rejected.

Section 116(1) provides, however, that:

Upon the approval of a petition, the judge may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon him and the court—

(1) permit the rejection of executory contracts of the debtor, except contracts in the public authority, upon notice to the parties to such contracts and to such other parties in interest as the judge may designate . . .

Section 202 provides in part that "[i]n case an executory contract shall be rejected pursuant to the provisions of a plan or to the permission of the court given in a proceeding under this chapter . . . any person injured by such rejection shall . . . be deemed a creditor."

Finally, Rule 10–606 of the Rules of Bankruptcy Procedure provides that:

When a motion is made for the rejection of an executory contract, including an unexpired lease, other than as a part of the plan, the court shall set a hearing on notice to the parties to the contract and to such other parties in interest as the court may direct.

When these latter statutory provisions are read in conjunction with Rule 10–606, they appear to require some judicial action before an executory contract can be rejected. They are in direct contradiction to Section 70(b), which seems to allow for the "rejection by inaction" of executory contracts. According to Section 102 of the Bankruptcy Act, provisions of Chapters I—VII are to apply to Chapter X to the extent that they are not inconsistent or in conflict with the chapter. It is apparent, therefore, that Section 70(b) is inapplicable to Chapter X corporate reorganizations. The case law supports this analysis. *In Re Childs Co.*, 64 F.Supp. 282, 286 (S.D.N.Y.1944); *In Re Packer Ave. Associates*, 1 B.R. 286, 293–94 (E.D.Pa.1979). The court in *Childs* stated that:

I am convinced that the provisions of § 70, sub. b, are inconsistent and in conflict with the provisions of Sections 116(1) and 202, and, therefore, may not be considered in any way as governing the machinery for the rejection of leases by a Trustee in a Chapter X proceeding.

I have read a number of text books on this subject. I have found none that disagree with me but I have found several which do agree with me. See Collier on Bankruptcy, 14th Edition, Vol. 7, page 605, also Volume 4, note 30, page 1233. The last citation is so pertinent and apropos that I feel I should quote it:

"Compare also Sec. 116(1) dealing with the judge's power to permit rejection of contracts in corporate reorganizations under Chapter X. The difference between Sec. 116(1) and Sec. 70, sub. b, probably lies in the fact that corporate reorganization contemplates a continuance of the debtor's affairs and eventual rehabilitation. Hence, rejection of an executory contract assumes a more important aspect in light of future events. Ordinary bankruptcy, on the other hand, contemplates only inevitable liquidation insofar as the bankrupt is concerned."

This court has noted previously that there was no formal rejection of Mills' employment contract. Neither was there "an incourt coalescence of repudiation by the trustee with approval by the court." *In Re Hoe & Co., Inc.*, 508 F.2d 1126, 1130 (2d Cir. 1974). This court recognizes that the trustee felt that he could ignore Mr. Mills' employment contract,[6] and such could be seen as some evidence of repudiation. There is nothing in the record to indicate that the bankruptcy court knowingly acquiesced in the unilateral actions of the trustee, thereby giving them an aura of judicial approval. That court *did* indicate in its order that the trustee could not adopt Mills' employment contract because he was prevented from so doing by Section 191 of the Bankruptcy Act. The bankruptcy court

6. Transcript, p. 81.

"approved a monthly salary, but not the employment contract."[7] There is no question that the bankruptcy court has the authority under Section 191 to authorize compensation for employees of the reorganized company. But this section cannot, used alone, obviate the need for an explicit rejection of outstanding executory contracts in reorganization proceedings. Such rejections simply cannot be tacit or informal. *Federal's Inc. v. Edmonton Investment Co.*, 404 F.Supp. 68 (E.D. Michigan S.D., 1975), *aff'd*, 555 F.2d 577 (6th Cir. 1977). If an executory contract could be invalidated simply by issuing an order pursuant to Section 191, the requirement of judicial supervision in corporate reorganizations would be useless. An additional factor which must be considered is the lack of evidence that the employment contract was considered at the time the bankruptcy court signed the July 14, 1977 order.[8] The bankruptcy court was therefore in error in its reliance on that order.

This court is of the opinion that the employment contract remained in force, recognizing that while there was no explicit rejection of the employment contract, neither was there an explicit assumption. Assumption of an executory contract should likewise follow a judicially supervised procedure, whenever possible. *See Local Joint Executive, AFL-CIO v. Hotel Circle, Inc.*, 419 F.Supp. 778, 787 (S.D.Cal.1976), *aff'd*, 613 F.2d 210 (9th Cir. 1980). There is an exception, however:

> Where a contract has not been rejected as an executory contract with the permission of the court and where the debtor in possession has accepted the services of the employees under the terms of that contract, that contract remains in full force and the debtor in possession is bound by all of its terms.

*In Re Penn Fruit Co., Inc.*, 1 B.R. 714, 716 (E.D.Pa.1979), *citing Brown v. Presbyterian Ministers' Fund*, 484 F.2d 998 (3d Cir. 1973); *In Re Public Ledger*, 161 F.2d 762, (3d Cir. 1947). *See* 8 Collier on Bankruptcy § 313(1), ¶ 3.15[6] (14th ed. 1978). *See also Consolidated Gas Electric Light & Power Co. v. United Railways & Electric Co.*, 85 F.2d 799 (4th Cir. 1936), *cert. denied*, 300 U.S. 663, 57 S.Ct. 493, 81 L.Ed. 871 (1936).

In this case, Larry T. Mills was retained by the trustee after the petition for reorganization was filed and continued to render his services to Washington Group for over a year after that. That he was eventually requested to resign does not alter this fact. The trustee accepted Mr. Mills' services and is therefore bound by the terms of the contract. He cannot accept the benefits of the contract without assuming its burdens as well. *See, e.g., Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171, 175 (5th Cir. 1972), and the cases cited therein.

As the employment contract remained in effect, its provisions govern the amount which is due to Mr. Mills under his proof of claim as well as what priority, if any, should be accorded to that amount. Therein lies the difficulty for this court. The terms of the contract should be interpreted by the bankruptcy court with more specificity.

It is simply not enough for the bankruptcy court to declare that the terms of the contract are "ambiguous" and that "an interpretation could be in favor of Larry T. Mills or it could be against him."[9] This court cannot draw any conclusions about the contract itself without more definite findings. Otherwise, it is put into the dubious position of second guessing the trier of

---

7. Order of Bankruptcy Court, August 19, 1981, p. 4. The monthly salary approved by the court for Mr. Mills was the same as he had been receiving previously. It is difficult to see, therefore, how the salary approved by the court could be distinguished from the rest of the employment contract.

8. There was apparently no evidence concerning the July 14, 1977 order introduced at the June 19, 1981 hearing on the trustee's objections to Mills' proof of claim. This limits this court's ability to fully consider the bankruptcy court's actions.

9. Order of Bankruptcy Court, August 19, 1981, p. 3.

fact. This court has the same difficulty with the bankruptcy court's enigmatic finding that Mr. Mills' conduct was a "borderline case" *after* enumerating reasons for his discharge which might be considered cause. Without definite findings, this court is unable to properly review Mr. Mills' discharge and how it should be treated under the contract. It appears that this is necessary to properly determine what Mr. Mills should receive.

The bankruptcy court is correct in its assessment of the scarcity of authority governing severance pay for employees in reorganization proceedings. Though no clear lines of precedent have emerged,[10] such authority exists. The court erred, therefore, in resorting to its equity powers in ruling on Mr. Mills' claim. Accordingly, this court will reverse the bankruptcy court's compromise and adjustment of Larry T. Mills' claim. Upon remand, the bankruptcy court will specifically determine, along with its other findings, the amount of severance pay to which Mills is entitled and whether it will be considered as a cost of administration, thereby entitled to priority, or an unsecured claim.

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that the August 19, 1981 order of the bankruptcy court is reversed and remanded for further proceedings in accordance with this opinion.

---

10. *In Re Public Ledger, Inc.*, 161 F.2d 762 (3d Cir. 1947); *Straus-Duparquet, Inc. v. Local 3, I.B.E.W.*, 386 F.2d 649 (2d Cir. 1967); *In Re Unishops, Inc.*, 553 F.2d 305 (2d Cir. 1977); *In Re Mammoth Mart*, 536 F.2d 950 (1st Cir. 1976). *See generally* Comment, "The Priority of a Severance Pay Claim in Bankruptcy," 27 U.C.L.A.L.Rev. 722 (1980).