**In re LANDMARK LAND COMPANY OF OKLAHOMA, INC. an Oklahoma Corporation, Debtor.**

**In re LANDMARK LAND COMPANY OF CAROLINA, INC. a Delaware Corporation, Debtor.**

**In re CLOCK TOWER INVESTMENTS, LTD., a California Corporation, Debtor.**

**In re LANDMARK LAND COMPANY OF CALIFORNIA, INC., a Delaware Corporation, Debtor.**

**In re LANDMARK LAND COMPANY OF LOUISIANA, INC., a Louisiana Corporation, Debtor.**

**In re LANDMARK LAND COMPANY OF FLORIDA, INC., a Delaware Corporation, Debtor.**

Civ. A. Nos. 2:91–3286–1 to 2:91–3291–1. Bankruptcy Nos. 91–05815, 91–05814, 91–05818, 91–05819, 91–05817 and 91–05816.

United States District Court, D. South Carolina, Charleston Division.

Jan. 16, 1992.

Lawrence Wilbur Johnson, Jr., Adams, Quackenbush, Herring & Stuart, Columbia, S.C., for Resolution Trust Corp.

George Barry Cauthen, Columbia, S.C., for CRI, Inc.

John B. Hagerty, Nelson, Mullins, Riley & Scarborough, George Barry Cauthen, Columbia, S.C., for Unsecured Creditors Committees.

Patrick Michael Duffy, McNair Law Firm, Charleston, S.C., Michael McNulty Beal, McNair Law Firm, P.A., Columbia, S.C., Michael Paul Kirschner, Jackie L. Hill, Jr., Kiran A. Phansalkar, Alice A. Sias, Hastie & Kirschner, Oklahoma City, Okl., Richard S. Broude, James H. Bathon, Mayer, Brown & Platt, New York City, for debtors.

Joseph Fred Buzhardt, III, Chantilly, Va., Mary Ellen Goman Slocum, Columbia, S.C., for U.S. Trustee.

John F. Martin, Young, Clement, Rivers & Tisdale, Charleston, S.C., for Laidlaw Waste Systems, Inc.

Simon A. Housman, Palm Springs, Cal., for High Tech Irrigation, Inc.

John W. Mee, Oklahoma City, Okl., for ITT Administrators.

John Quinn, Roy Z. Silva, Los Angeles, Cal., for Quinn Emanuel & Urquhart.

Richard W. Burnette, Jr., Los Angeles, Cal., for Farm Credit Services of Southern California.

Robert Geoffrey Levy, Levy and Goodwin, Columbia, S.C., for Arvida/JMB Partners.

## ORDER

HAWKINS, Chief Judge.

This matter is before the Court on Debtors' Motion: (i) For Approval of Employee Benefits; (ii) to Limit Notice; (iii) to Limit Time (the "Motion") which was filed and served by the Debtors on December 19, 1991. Responses to the Motion were filed by the Official Landmark Unsecured Creditor's Committee and the Resolution Trust Corporation. Pursuant to notice the matter was called for hearing on January 6, 1992 and by agreement of the parties the matter was continued until hearing on January 7, 1992.

Debtors' requests for relief regarding limitation of notice and time for notice have been resolved by an operating order which was prepared with input from all interested parties and was signed by this court on January 7, 1992. Therefore, this order on the motion is not concerned with those particular requests for relief.

Debtors contend that the continued provisions of previously established personnel policies constitute acts within the ordinary course of business. Debtors assert that in an abundance of caution they seek Court approval of the personnel policies relating to employee vacation, sick leave, severance pay, and holidays.

Appearances were entered at the hearing for the parties as follows: Patrick Michael Duffy, of the McNair firm, P.A., for the debtors; George B. Cauthen, of the firm of Nelson, Mullins, Riley and Scarborough, for the Official Landmark Unsecured Cred-

itor's Committee; Lawrence W. Johnson, Jr., of the firm Adams, Quackenbush, Herring and Stuart, P.A., for the Resolution Trust Corporation; and other parties in interest as set forth in the official transcript of record.

Debtors assert that the personnel policies for which they seek approval are a continuation of policies which were in place prior to the filing of the Chapter 11 petitions. Evidence presented shows that these policies are applied across the board to employees at every level in the debtor organizations. Debtors contend that a continuation of these personnel policies is necessary to maintain good relations with and high morale among the employees of the debtor corporations and will further the debtors efforts to reorganize.

Neither the Resolution Trust Corporation, nor the Official Landmark Unsecured Creditors' Committee, both of which filed responses to the motion, vigorously opposed the vacation, sick or holiday package offered to lower level employees as a part of their employment benefits. The terms of vacation and sick leave do not involve the payment for unused portions of accrued vacation or sick leave.

Furthermore, though the Resolution Trust Corporation asked a number of questions of witnesses with regard to the terms of severance pay available to upper level management, it did not rigorously object to payment of severance pay for termination of lower level employees. The Official Landmark Unsecured Creditors' Committee objected largely on the grounds that payment of employees should be a matter addressed in an operating order rather than by separate motion to the court.

The terms of severance pay for all employees is two weeks pay for twelve months of continuous employment. After twelve months of continuous employment, severance pay is calculated to be the greater of two weeks or one week of pay for each year of employment up to a maximum of twelve weeks pay.

There is a split of authority on the issue of whether severance pay is entitled to an administrative priority under § 507 of the Bankruptcy Code. One faction has found that severance pay is a form of compensation for termination of the employment relationship. In *Straus–Duparquet, Inc. v. Local Union Number 3, I.B.E.W.,* the Second Circuit Court of Appeals allowed severance pay to be paid as an administrative priority because severance pay affords the employee an opportunity for economic adjustment and compensates the employee for losses attributable to dismissal when termination is for reasons other than the employee's misconduct. *Straus–Duparquet, Inc. v. Local Union Number 3, I.B.E.W.,* 386 F.2d 649, 651 (2d Cir.1967) (discharged employees sought administrative priority for vacation and severance pay under a collective bargaining agreement).

The other faction has found that severance pay based on length of employment, when a portion of that period of employment took place pre-petition, is not entitled to an administrative priority, but that when payment of severance for termination is in lieu of notice, severance pay is entitled to an administrative priority. *See e.g., In re Health Maintenance Foundation,* 680 F.2d 619 (9th Cir.1982); *In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir.1976); *In re Public Ledger,* 161 F.2d 762 (3d Cir. 1947).

In *Mammoth Mart, Inc.,* the First Circuit Court of Appeals reasoned that whether a claim for severance pay based upon an unrejected contract with the debtor will be entitled to an administrative priority depends on the extent to which consideration supporting the claim for severance pay was supplied during the period of reorganization. *In re Mammoth Mart, Inc.,* 536 F.2d at 955. The appellate court opined that if an employment contract provides that all discharged employees are to receive an amount equal to their salaries for a specified period as severance, the consideration supporting the claim will have been supplied during reorganization and the former employee would be entitled to a priority. *Id.* However, *Mammoth Mart* states that if length of employment is a determining factor in calculating the amount of severance pay due each dismissed employee, and

a period of that employment was pre-petition, the claim does not rise to priority status. Notwithstanding this conclusion, the First Circuit noted that the result would be different "if the debtor-in-possession had, to induce the employees to remain on the job, promised them that, if discharged, they would receive severance pay based on the prior practice. Then, the consideration supporting the [employees'] claims would be the services performed subsequent to the debtor-in-possession's promise." *Id.*, at 955 n. 4.

Case law in the Fourth Circuit touches upon this issue in *Mills v. Gilbert*, 22 B.R. 482 (M.D.N.C.1982). The *Mills* case involves the terms of severance pay contained in a specific executory employment contract which was not expressly rejected or assumed by a bankruptcy trustee. In fashioning its opinion in *Mills*, the district court did not subscribe to the reasoning of either the First Circuit or the Second Circuit on the issue of treating severance pay as an administrative expense. Instead, the appellate court remanded the matter to the bankruptcy court to consider, in reaching its decision on the employee contract provision regarding severance pay, the available opposing opinions from other circuit courts. Therefore, the question is still open in this circuit.

In *Rawson Food Services, Inc.*, 67 B.R. 351 (M.D.Fla.1986), the district court followed the reasoning of the First Circuit Court of Appeals in *Mammoth Mart, Inc.*, *supra*, and dismissed the reasoning of the Second Circuit as found in *Straus–Duparquet, Inc. v. Local No. 3 I.B.E.W.*, *supra*. Under the fact situation presented it in *Rawson Food Services, Inc.*, the Florida District Court found the Second Circuit argument, that severance pay based on length of service is intended to compensate discharged employees for the hardships attributable to dismissal, faulty because it would require *a priori* that senior employees suffer more hardship than those suffered by junior employees. The Florida District Court found more solid the reasoning it gleaned from *In re Mammoth Mart, Inc.* which has been cited in several other cases for the proposition that severance

pay based on length of service with the debtor company pre-petition should not be given an administrative priority. In fact, *Mammoth Mart* states only that post-petition consideration for severance pay must be given to afford such pay an administrative priority and that if that post-petition consideration is the result of an affirmation of pre-petition personnel policy, then service rendered pre-petition is not the determinative factor.

This court does not find fault with the premise that a greater number of senior employees may suffer more hardship upon termination than junior employees. A time-proven employee who has adjusted to a certain level of economic security in his job and whose skills have been honed to a certain level of proficiency in a given position perhaps is more traumatized by loss of a job. Furthermore, there is some likelihood that a more senior employee is also an older employee who may have more difficulty marketing his or her skills in the job market. Length of service is a measurement—a method of calculating severance pay to compensate an employee for losses attributable to dismissal. The length of service is not consideration for receipt of severance pay. The consideration for severance pay is the work performed: maintenance of a stable, competent work force that smoothly continues operation of the debtor company despite the reorganization proceeding. The debtor-in-possession reaps the benefits, post-petition, of retaining competent loyal employees. If post-petition there were a mass exodus, the debtor would have to start again with new employees at every level and operations would slow to a near halt as personnel adjusted to their new work environment, duties and routines.

Having reviewed the differing opinions of the First Circuit and the Second Circuit, this court finds that equity and sound management policy require it to follow the Second Circuit's reasoning that severance pay is designed to compensate employees for the economic disruption and readjustment that follows termination. This court is compelled to allow the continuation of

**414**

current personnel policies which provide for limited vacation and sick leave without penalty and for adoption of the existing severance pay scheme to discharged employees. Further, this court finds that the personnel policies followed by these debtors as outlined in Schedule B attached to the debtors' motion are most reasonable and that it will further the reorganization efforts of these debtors to permit these policies to remain in place.

Loyal employees who have remained and will remain on the job need to be assured that should the debtors reorganization efforts require areas of service to be streamlined and employees discharged, the discharged employees will be treated fairly and in accordance with the same policy provisions under which they initially agreed to be employed and under which they have remained with the debtor companies through this period of financial strife.

For the reasons hereinabove stated, this court grants debtors' motion for approval of employee benefits as outlined in Schedule B of the debtors' motion.

IT IS SO ORDERED.