In re U.S. METALSOURCE
CORP., Debtor.

OFFICIAL COMMITTEE OF UNSE-
CURED CREDITORS METAL-
SOURCE CORP., Movant,

v.

U.S. METALSOURCE CORP.,
Respondent.

Bankruptcy No. 91–22919 JLC.
Motion No. PMS–1.

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 21, 1993.

Paul M. Singer, Diane M. Lancaster, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for Committee of Unsecured Creditors.

Steven T. Shreve, Stone, Glosser, & Stone, Pittsburgh, PA, for Salaried Employees.

Office of U.S. Trustee, Pittsburgh, PA, for U.S. trustee.

David B. Salzman, Campbell and Levine, Pittsburgh, PA, for debtor.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Chief Judge.

The matter before the Court is a motion filed by the Committee of Unsecured Creditors of U.S. Metalsource, Corp. seeking: 1) a modification of the Wage Order insofar as it relates to severance and vacation pay and 2) authorization for the Committee to bring suit, in the name of the Debtor, to recover any "excess" severance payments that the Debtor may have made to terminated employees under the Wage Order. After careful consideration of the record and the representations made by the parties, the Court determines that: 1) this Court's first day Wage Order was a final order; 2) the employment relationship between the Debtor and its Salaried Employees was not an "executory contract" as the term is used within the Bankruptcy Code; 3) the Court should not modify its first day Wage Order; and 4) the payment of severance and vacation benefits to salaried employees are not transactions in the ordinary course of business and are subject to prioritization pursuant to 11 U.S.C. § 507(a)(3). •

Finally, the Committee's request for authorization to bring suit in the name of the Debtor to recover any "excess" severance payments that the Debtor may have made to terminated employees under the Wage Order is denied. The Wage Order itself was not wisely considered by the Debtor as vital to a successful reorganization. In addition, it was not monitored by the Committee of Unsecured Creditors. Employees who have received payments in excess of $2,000 in reliance upon this Court's Wage Order are not required to return such money to the Debtor, and the Wage Order is vacated as of March 10, 1993, the date this matter was filed by the Committee.

## I. FACTS

On August 12, 1991, U.S. Metalsource Corp. (hereinafter "the Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Contemporaneously with its petition, the Debtor filed several first day emergency motions including, *inter alia,* an Emergency Application for an Order Authorizing Payment of Pre–Petition Wages, Salaries, Commissions, Reimbursement of Employee Business Expenses and Payment of Other Pre–Petition Employee Benefits (hereinafter the "Wage Motion").

The Debtor's request for relief, as set forth in the Wage Motion, asserted that the payment of severance pay is permitted because such claims "are entitled to priority in payment under Section 507(a)(3) or Section 507(a)(4) of the Bankruptcy Code." The Wage Motion also stated that "[t]he total amount of payments requested is insignificant when compared to the size of the Debtor's estate and the importance of the continued services of employees." These are not adequate grounds for such an order.

On August 13, 1991, a hearing was held on the Wage Motion whereby the attorney for the Debtor, David Salzman, described the Debtor's business operations as being "a chain of 12 [steel] service centers with the emphasis on the word 'service.'" Mr. Salzman emphasized further in his testimony at the hearing that:

> The Debtor's business is very "people" oriented. Its employees are essential to its continued operations ... To a large degree the Debtor's business is made up of the relationships of the people that work for it ... That is the core and essence of the business ...

> The Debtor believes that the severance [policy] is very important to its operations. In light of the fact that it has announced [that it is] reducing service centers, [the Debtor] needs, for the benefit and morale of its employees, to be able to tell its employees that there will be a severance package for them in the event that their

service center is one that would be ultimately closed ...

The Debtor believes that this will provide the morale for the employees that remain, to enable them to continue to work, ... and to hopefully enable us to reorganize around the profitable service centers.

(Audio record: Hearing, August 13, 1991). Based upon the foregoing representations made by Debtor's counsel, the Court granted the relief requested by the Debtor in the Wage Motion. The Debtor was unable to produce a profit. When this became apparent, the Committee should have requested a change in the policy.

The only party to receive notice of the hearing and pendency of the Wage Motion was the United States Trustee.[1] The Debtor served a copy of the Court's order (hereinafter the "Wage Order") to all parties whose names appeared on the service list for this case. Included on this service list was the Debtor's twenty largest unsecured creditors. The Committee did not monitor this Order.

Subsequent to the entry of the Wage Order, no appeal was taken and no party requested the Court reconsider its decision[2]. The text of the Wage Order states in pertinent part:

... it is further ORDERED, that the Debtor ... is, authorized and empowered to pay, in the ordinary course of business and in accordance with existing policies and practices, vacation and sick pay on account of services rendered by employees to the Debtors, whether before or after the Filing Date; and it is further ...

ORDERED, that the Debtor be and hereby is, authorized and empowered to pay severance pay (excluding severance pay under executive employment contracts but including severance pay as to employees who become entitled before the Filing Date), on account of services rendered by its employees, whether before or after the Filing Date, in the ordinary course of business and in accordance with existing policies and practices; except that no severance pay for a period in excess of four (4) month's pay may be paid to one employee without further Order of Court.

It is undisputed that the Debtor made severance payments to its terminated employees in accordance with the Wage Order.

The Debtor's severance policy has been in effect since May 1, 1990 and is outlined in detail in an employee booklet. Touted as "an important part of your employee benefits," the employee booklet encourages each employee to "fully understand" his or her "rights and duties" under the severance policy. In the employee booklet, the Debtor specifically reserved the right "to modify or terminate any or all of the provisions of the Plan at any time."

The Debtor's severance policy can be described as a graduated benefit scale whereby the amount of severance pay awarded to a terminated employee is contingent upon the duration of the former employee's service.[3] Since obtaining the Wage Order, the Debtor has issued a number of releases to its employees. Upon termination, the practice of the Debtor has been to generally advise each terminated employee of both the Wage Order and of the continuance of the Debtor's pre-Chapter 11 severance policy.

Since the petition date, the Debtor's operations have been far from smooth. The Debtor has continued to operate at a loss and a plan of reorganization was not confirmed until May 1993, almost three years after it filed

---

1. The C.I.T. Group, the largest secured creditor of U.S. Metalsource, was present at the August 13, 1991 hearing. The C.I.T. Group did not object to the relief requested by the Debtor nor did it object to the manner in which it was sought.

2. At the August 13, 1991 hearing, the Court, cognizant of the *ex parte* manner in which it granted the Wage Motion, stated: "[I]f the Creditors Committee, after they get organized, wants to refine [the order] somewhat, I think I may listen to something on that."

3. As of the petition date, the Debtor's policy provided that 1) terminated employees with zero to six months of service are entitled to two week's pay upon termination; 2) terminated employees with six months to five years of service are entitled to one month's pay; 3) terminated employees with five to ten years of service are entitled to two month's pay; 4) terminated employees with ten to fifteen years of service are entitled to three months pay; and 5) any employee terminated after fifteen years of service is entitled to four month's pay.

bankruptcy. The Unsecured Creditor's Committee of U.S. Metalsource Corp. (hereinafter the "Committee"), beginning with its appointment on August 13, 1991, has been an active participant in this case. In addition to filing two plans of reorganization, the Committee petitioned this Court to replace the management of the Debtor with personnel "appropriate" to conduct the disposition contemplated by the Committee's second proposed plan.

On January 4, 1993, after notice and hearing, the Court approved the appointment of Warren Beiger as the "Responsible Officer" to oversee and manage the Debtor's asset disposition process. Subsequent to this appointment, the Committee learned that the Debtor had paid 369 terminated employees a total of $1,103,604.00 in severance benefits between the petition date (August 12, 1991) and January 15, 1993. The overall average severance payment was $2,990.79. However, of the $1.1 million in total severance benefits paid, $309,888.00 were made to 21 salaried employees. The average payment for these 21 salaried employees was $14,756. This sum does not seem wisely spent. The severance payments made to these salaried employees are the subject of the dispute presently before the Court.

On March 10, 1993, 19 months after the entry of the Wage Order, the Committee filed a motion seeking: i) a modification of the Wage Order insofar as it relates to severance and vacation pay and ii) authorization for the Committee to bring suit, in the name of the Debtor, to recover any "excess" severance payments that the Debtor may have made to terminated employees under the Wage Order. Specifically, the Committee is seeking to retroactively limit the severance pay received by each of the Debtor's current and previously terminated employees to the lesser of 1) the actual amount of severance pay that an employee is eligible to receive pursuant to the Debtor's prepetition sever-

ance policy, or 2) the $2,000 wage priority cap under 11 U.S.C. § 507(a)(3)(B). Any balance remaining in excess of this amount would then be treated as a prepetition unsecured claim.[4] The Committee concedes that any severance pay earned postpetition is a claim entitled to administrative priority pursuant to 11 U.S.C. § 507(a)(1).

A group of salaried employees (hereinafter the "Salaried Employees") objected to the Committee's motion and contended that: 1) the Wage Order is a final order and any appeal of that order should have been made within 10 days of the judgment or consistent with FRBP 8002; 2) the Committee is barred by the doctrine of laches from modifying the Wage Order; and 3) the Debtor's motion to continue its prepetition severance pay policies was in effect a request to assume executory contracts.

## II. ANALYSIS

The Committee argues that this Court has the authority to modify the Wage Order. First, the Committee contends that the order is interlocutory in nature and therefore, it is subject to further modification. Second, the Committee asserts that even if the Wage Order is deemed to be a final order, this Court has the authority to modify it pursuant to FRCP 60. Third and finally, the Committee argues that the Debtor's severance and vacation benefit plans are not executory contracts subject to 11 U.S.C. § 365, and that alternatively, even if these benefits were executory contracts, the Debtor's prepetition relationship with the salaried employees was not assumed by the Debtor.

### A. The Wage Order and Finality

■ A bankruptcy judge is authorized to implement the provisions of the Bankruptcy Code by issuing any necessary or appropriate order, judgment, or process. 11 U.S.C.

---

4. The Committee also seeks to prospectively amend the Debtor's vacation pay policy. In particular, the Committee proposes that all current employees of the Debtor shall receive vacation pay for the 1993 calendar year in an amount equal to the proportionate share of vacation pay actually earned by each employee in 1993. For instance, if an employee works through February

28, 1993 (two months) an employee will receive one-sixth of the vacation pay that he or she would be entitled to receive for the full year. Because no party has expressly objected to this request, it will be granted and the court will only analyze the competing legal theories as they relate to the dispute over the severance payments made by the Debtor.

§ 105(a). The first issue in this case is whether the Court's Wage Order, issued on the second day of this bankruptcy case, was a final order.

The Committee asserts that the Wage Order is interlocutory because it did not finally determine any parties' rights with respect to postpetition payments. The Committee believes that the Wage Order merely confirmed the Debtor's ability to make such payments pending any challenge. Furthermore, the Committee argues that the Wage Order should be considered interlocutory because it is "housekeeping" in nature and does not actually adjudicate a claim or the aspects of the merits of any proceeding.

The Salaried Employees argue that the Wage Order is a final and non-appealable Order that may not be vacated and/or modified. The reasons set forth by the Salaried Employees are that there is no language in the Wage Order that suggests that it is an interim order and there is no indication that a final hearing will be scheduled or held in the future. In addition, the Salaried Employees believe that the Wage Order is final because the Court did not indicate at the hearing or at any other time that it intended the Order to be interim or temporary.

■ A final order or decree is generally "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)); *see also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Powers v. Southland Corp.*, 4 F.3d 223, 230–31 (3rd Cir.1993); *United States v. Bertoli*, 994 F.2d 1002, 1010–11 (3rd Cir.1993); *Praxis Properties, Inc. v. Colonial Savings Bank, S.L.A.*, 947 F.2d 49, 54 n. 5 (3rd Cir.1991); *Allegheny Intern., Inc. v. Allegheny Ludlum Steel Corp.*, 920 F.2d 1127, 1131 (3rd Cir.1990). Ordinarily, the determination of whether an order is final arises in circumstances where courts hearing bankruptcy appeals are forced to make jurisdictional decisions. *See, In re Continental Airlines, Inc.*, 932 F.2d 282 (3rd Cir.1991); *Alle-*

*gheny Intern. v. Allegheny Ludlum Steel.*, 920 F.2d 1127 (3rd Cir.1990); *In re Saco Local Development Corp.*, 711 F.2d 441 (1st Cir.1983). This is so because the Bankruptcy Reform Act of 1978 limits the district court's appellate jurisdiction to bankruptcy matters constituting "final" judgments, orders, and decrees. 28 U.S.C. § 158(a).

■ In the bankruptcy context, the Third Circuit has adopted a pragmatic and less technical view of the finality requirement, treating orders as final that in other contexts might be considered non-final. *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34, 36–37 (3rd Cir.1993); *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3rd Cir.1985); *accord Walsh Trucking Co. v. Insurance Co. of North America*, 838 F.2d 698, 701 (3rd Cir.1988). In *In re Amatex*, the Third Circuit noted:

> The rationale for viewing finality under a less rigorous standard in the bankruptcy area is clear. Bankruptcy cases frequently involve protracted proceedings with many parties. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan or reorganization is approved, courts have permitted appellate review of orders that in other contexts would be considered interlocutory.

*In re Amatex*, 755 F.2d at 1039; *accord In re Brown*, 803 F.2d 120 (3rd Cir.1986). This "less rigorous" standard of review includes consideration of the impact of the disputed issue on the assets of the bankruptcy estate, the necessity for additional fact finding, and the preclusive effect of a decision on the merits and furtherance of judicial economy. *In re Continental Airlines*, 932 F.2d at 285; *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d at 37.

After careful consideration of the Wage Order, the Court determines that the Committee's argument that the Wage Order was merely an interlocutory order for the benefit of administrative housekeeping is a misconception. The Wage Order did not mandate benefit payments, however, it clearly authorized the Debtor to make postpetition benefit payments in a manner consistent with pre-

petition policies and practices. Moreover, the Wage Order left nothing further for the Court to adjudicate and neither an evidentiary hearing nor a final hearing were requested.

The Court believes that first day orders, as a general rule, should be considered final because to find otherwise would create a great deal of delay, confusion and disruption. The equitable policies at work here support the finality of first day orders. It is important that debtors be able to conduct their reorganizations and businesses in a consistent manner. If first day orders are unwise or no longer productive, they should be appealed or the court should be asked to vacate the orders as improvidently granted.

■ Nevertheless, even though first day orders may be final, this does not mean that they cannot be modified when there is evidence of unfairness, lack of due process or no reorganizational purpose being served. First day orders are extraordinary orders that are generally issued without the normal debate and examination given to ordinary matters. They are urged upon the court as necessary or essential for the debtor's reorganization. If and when a first day order is no longer necessary and/or improperly issued, such conditions must be brought to the court's attention. The interested parties, especially the committee of unsecured creditors, should carefully examine and continuously monitor such orders. The purpose of first day orders is to benefit creditors, by maximizing reorganization values. Many times they are in conflict with other provisions of the Bankruptcy Code. Such orders carry a heavy burden.

The Court wishes to point out that the Debtor's attorneys owed the Court more facts when the Wage Motion was filed. The Committee should have investigated the effect of the Wage Order. The Debtor's officers, as trustee, owed the Court a duty to monitor this exception of the Code. All of the attorneys involved in this matter should have been more alert and better informed. No cost estimates for these proposed employee benefit payments were offered by the

Debtor. These estimates could have been easily provided. In addition, cost estimates were not demanded by the Committee.

In retrospect, the Debtor's decision to pay all terminated salaried employees generous severance and vacation benefits was not founded in good policy or business judgment. The Debtor clearly should have been more selective and discriminating. Not *every* employee was indispensable to its operation. These types of benefit payments are not in the ordinary course before bankruptcy, even if the business is insolvent. However, once in bankruptcy, the Bankruptcy Code statutorily and specifically provides for a classification of such payments.

Given that the Debtor decided to make such payments, it was the Committee's responsibility to come forward with this information sooner. Waiting 19 months after the Wage Order was entered and after a plan is confirmed, is too late. Therefore, in the furtherance of judicial economy and equitable policies, and for the reasons stated above, the Wage Order is deemed final.

### B. *Rule 60(b) Notion*

Because the Wage Order was a final order, any appeal should have been taken within ten days. FRBP 8002(a). The Committee did not appeal the Wage Order, therefore in the alternative, the Committee argues that if the Wage Order is a final order, the Court has the authority to modify it and should exercise such authority. The Committee contends that: (1) the Wage Order may be modified under FRCP 60(b)(3) and 60(b)(6) on the basis that the management for the Debtor misrepresented in the Wage Motion that the severance claims were "insignificant" and (2) the Wage Order may be modified under FRCP 60(b)(4) because it is void for lack of procedural due process.[5]

FRCP 60(b) provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ...

---

5. Bankruptcy Rule 9024 incorporates FRCP 60.

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void; ... or

(6) any other reason justifying relief from the operation of the judgment....

A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

The statute of limitations for filing a Rule 60(b) motion varies with the type of motion brought. A Rule 60(b)(3) motion may be made "not more than one year after the judgment, order, or proceeding was entered." FRCP 60(b) A Rule 60(b)(4) or (b)(6) motion "shall be made within a reasonable time." FRCP 60(b); *See* Wright & Miller, 11 *Federal Practice and Procedure* § 2862, at 197 (1973) and the cases cited therein; *In re Center Wholesale, Inc.*, 759 F.2d 1440 (9th Cir.1985) (Courts have indicated that a Rule 60(b)(4) motion can be brought at any time because of the nature of the motion).

■ Therefore, the Committee's motion asserting Rule 60(b)(3), made 19 months after the entry of the Wage Order, is not timely. It is apparent to the Court that the Committee foresaw this problem and attempted to make up for this one-year time limitation by invoking Rule 60(b)(6). This attempt fails because Rule 60(b)(6) may not be utilized as a means to circumvent the time limitations imposed upon FRCP 60(b)(3). *See Stradley v. Cortez*, 518 F.2d 488, 493 (3rd Cir.1975); Moore et al., 7 *Moore's Federal Practice*, ¶ 60.27[3] (2d ed.1989). Under the circumstances such as these, alleging that a court order is void, this Court will consider the Committee's motion as being brought within a reasonable time for the purposes of Rule 60(b)(4). Therefore, the issue that remains is whether the Wage Order is void for lack of procedural due process, thus giving this Court the authority to modify the Wage Order pursuant to Rule 60(b)(4).

■ The law provides that a judgment is not void merely because it is erroneous. *In re Center Wholesale, Inc.*, 759 F.2d at 1448. The Wage Order is void only if the Court lacked jurisdiction over the subject matter,

or the parties, or if the Court acted in a manner inconsistent with due process of law. *Id.; See also*, Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2862 at 198–200 (1973).

■ In the instant case, the Committee alleges that because it did not receive notice of the hearing in which the Court granted the Wage Order, it was deprived of its right to due process of law. In *In re James A. Phillips, Inc.*, 29 B.R. 391 (D.C.1983), the court analyzed the requirement of notice under the Bankruptcy Code and stated:

Unlike the implicit notice requirement of § 1109(b), provisions elsewhere in the Code explicitly deal with the issue of notice. Section 363(b) and § 363(c)(1), 11 U.S.C. § 363, provide that a trustee may use, sell or lease the bankrupt's property without notice and hearing only so long as the transactions are conducted "in the ordinary course of business." These provisions apply to a debtor in possession under 11 U.S.C. § 1107(a). Thus, if the payments in this case were transactions in the "ordinary course of business," there was no need for notice or hearing under the Bankruptcy Code....

*Id.* at 393. The facts of this case establish that the Debtor did not meet the notice requirements of 11 U.S.C. § 363(c) because as discussed above, the subject employee benefit payments were not in the ordinary course. However, this does not mean that the Committee was necessarily deprived of its right to procedural due process.

In *Mullane v. Central Hannover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the United States Supreme Court set forth the following due process requirements for notice:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections ... The notice must be of such nature as reasonably to convey the required information ... it must afford a reasonable time for those interested to

make their appearance ... But if with due regard for the practicalities of the case these conditions are reasonably met the constitutional requirements are satisfied. (citations omitted).

*Id.* at 314, 70 S.Ct. at 657. Therefore, the conditions of due process are reasonably calculated notice under all of the circumstances and an opportunity to be heard. These conditions must be "reasonably met."

In the instant case, only the Office of the United States Trustee received notice of the hearing for the Wage Motion. However, immediately after the Wage Order was signed and issued by the Court, the Debtor served all of the required parties, including the Committee and its members. The Salaried Employee's contend that the Committee's actual notice of the Wage Order within days of its entry was sufficient to reasonably meet the conditions of procedural due process because they could have brought this action under Rule 60.

After considering all of the circumstances of this case, the Court agrees with the Salaried Employees. Because of the urgent nature of most first day orders, they are generally issued under extraordinary circumstances that make it very difficult for all interested parties to receive adequate notice of the first day hearings. However, as the Court discussed previously, although first day orders are final, they are also modifiable and can be reconsidered by the Court upon request. Thus, if the Committee was unable to attend the first day Wage Motion hearing, their opportunity to be heard was not lost forever. The Committee had ample time before now to object to the Wage Order on the record and be considered by this Court.

In addition, the purpose of notice under the Due Process Clause is to apprise affected individuals of, and permit adequate protection for, an impending hearing. *In re Center Wholesale,* 759 F.2d at 1448 (citing *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978)). Although the Court is cognizant of both the emergency nature of most first day motions and the importance of having a debtor transform smoothly to a Chapter 11 debtor-in-possession, the Court believes that where interested parties are provided prompt notice of the order which may affect their rights, such action reasonably meets the constitutional requirements of due process. Therefore, at this late date, the Court's Wage Order is not void for lack of due process.

As a defense to the Committee's Rule 60 motion, the Salaried Employees contend that the doctrine of laches prevents the Committee from seeking to modify the Wage Order. Laches is an equitable doctrine based on the theory that a plaintiff who has "slept" on his or her rights for an unreasonably long time should not be permitted to bring suit where the delay has prejudiced the defendant. *Burke v. Gateway Clipper, Inc.,* 441 F.2d 946 (3rd Cir.1971). In *Burke* the Court of Appeals for the Third Circuit stated the test for finding laches:

> There are thus at least two elements which must be considered by the district court before a determination of laches can be made other than a mere lapse of time; inexcusable delay in light of the equities of the case and prejudice to the defendant.

*Id.* at 949.

The Committee has the burden of proving that its delay was excusable and that it did not unduly prejudice the Salaried Employees. Based on the facts of this case, the Court determines that the elements of laches are present and that the Committee did not meet its burden. The Committee's delay in bringing the instant motion has not been adequately explained. The Committee's actions greatly prejudice the Salaried Employees. Accordingly, the Committee's Rule 60(b)(4) motion is denied.

### C. *Modification of the Wage Order*

The Court must now consider whether it should exercise its authority to modify the Wage Order in the manner requested by the Committee.

The Committee argues that this Court should retroactively modify its Wage Order because the Debtor's severance pay policy is contrary to 11 U.S.C. § 507 and the case law interpreting it. The Salaried Employees have denied this contention and argue that each terminated employee was entitled to be

paid his or her full amount of severance pay. In particular, the Salaried Employees assert that no excessive payments were made because: 1) an executory contract existed between the Debtor and the Salaried Employees and that this executory contract entitled each employee an administrative priority claim upon termination; 2) 11 U.S.C. § 507 affords all the severance pay claims priority status; and 3) under a traditional administrative expense analysis, each Salaried Employee's claim for severance pay is allowed in its entirety.

■ The assumption of an executory contract by the debtor-in-possession results in an administrative expense priority claim for all obligations under that contract, regardless of whether the expenses arose postpetition or prepetition. *See, NLRB v. Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere* ... and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate, 11 U.S.C. § 503(b)(1)(A)"). The Salaried Employees argue that the Wage Motion and the subsequent Wage Order is an assumption of an executory contract. Before this Court can examine the validity of such an assertion, it must first determine whether an executory contract exists between the Debtor and the terminated Salaried Employees.

■ The term "executory contract" is not defined in the Bankruptcy Code. *See* 11 U.S.C. § 365(a). The legislative history of § 365, however, indicates that Congress intended the term to mean a contract "on which performance is due to some extent on both sides." H.R.Rep. No. 95–595, p. 347 (1977), *see*, S.Rep. No. 95–989, p. 58 (1977), U.S. Code Cong. & Admin.News pp. 5787, 5844, 6303, *see also, Bildisco*, 465 U.S. at 522, 104 S.Ct. at 1194. A definition of an executory contract which has gained wide acceptance is that offered by Harvard Law Professor Vern Countryman. Countryman proposes that a contract is executory for purposes of applying § 365 if the "obligation[s] of both the bankrupt and the other party to the

contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Countryman, *Executory Contracts in Bankruptcy, Part I*, 57 Minn.L.Rev. 439, 460 (1970).

Pennsylvania law provides that "[a]bsent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason". *In re Girard Medical Center*, 128 B.R. 938 (Bankr.E.D.Pa.1991) (quoting *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 175, 319 A.2d 174, 176 (1974)). This body of law is known as the "at-will doctrine." *Id.* at 940.

In the instant case, neither party disputes that the Salaried Employees are terminable-at-will. Moreover, neither party disputes that the Debtor had the authority to modify its severance and vacation benefits at any time without notice. In fact, the Debtor did change its severance and benefits policies right after the Committee filed the instant motion. Therefore, even if the Court assumes, *arguendo*, that the employee booklet created some type of contractual relationship between the Salaried Employees and the Debtor, the aforementioned contract did not "rise to the level of executory" as is required by the Bankruptcy Code.

The parties did not owe a future duty to each other. The only discernable future duty, under the facts of this case, was the obligation of the Debtor to pay severance pay to its terminated employees. This type of contractual duty to pay a debt is insufficient to create an executory contract. *See, In re Structurlite Plastics Corp.*, 86 B.R. 922 (Bankr.S.D.Ohio 1988) ("[W]here the only remaining performance to be rendered by a party to an agreement is the payment of money, the contract is not deemed to be executory within the meaning of § 365), see, In re Norquist, 43 B.R. 224 (Bankr. E.D.Wash.1984) (Contracts historically not treated as executory are those which evidence an unpaid debt. Such contracts have never been treated as executory for bankruptcy purposes and their treatment as such would only cause procedural problems which might perpetrate inequities among creditors).

Therefore, under an executory contract analysis, the Court determines that the Salaried Employees would not be entitled to an administrative expense priority claim.[6]

■ Notwithstanding the fact that executory contracts did not exist, the Salaried Employees argue that the Debtor's severance payments were not contrary to 11 U.S.C. § 507.[7] The Salaried Employees contend that all severance claims in this case are to be accorded priority status under both a § 507 analysis or under a traditional administrative expense analysis under 11 U.S.C. § 503.[8]

The existing judicial authority regarding the priority treatment of severance pay claims is split. One line of decisions holds that the entire amount of severance pay, regardless of whether it is "earned" both prepetition and postpetition, is an administrative expense entitled to first priority under § 507(a).[9] The second line of cases hold that severance pay is entitled to an administrative expense priority only to the extent to which the claim is proportionate to the postpetition consideration supplied to the debtor by the claimant.[10]

In *In re Jeannette Corp.*, 118 B.R. 327 (Bankr.W.D.Pa.1990), the court summed up the law in this jurisdiction concerning the prioritization of severance benefits under 11 U.S.C. §§ 503 and 507.

> [I]f the right to severance pay is based upon failure to give notice and not based upon length of service ... the full amount is thereof is entitled to the priority treatment statutorily prescribed for such a period.
>
> However, if the right to severance pay is based on the length of service the full amount is not necessarily entitled to priority treatment. The total amount of severance pay is subject to apportionment. Only that portion which was "earned" during the 90 [day] period prior to bankruptcy is entitled to third priority status under 11 U.S.C. § 507(a)(3). That portion (if any), which was earned postpetition may be entitled to first priority treatment as an administrative expense pursuant to 11 U.S.C. § 507(a)(1). Any remainder which is not so "earned" is to be treated as an unsecured general claim. (citations omitted)

*Id.* at 330 (citing *In re Public Ledger, Inc.*, 161 F.2d 762, 771, 773–74 (3rd Cir.1947); *See*

---

**6.** The Committee also argued that the Debtor's benefit plans were not executory contracts subject to § 365 because the Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA") applies. The Debtor did not respond to this argument. Because of the Court's findings in this Memorandum Opinion, it need not address the Committee's ERISA argument.

**7.** 11 U.S.C. § 507(a)(3) provides as follows:

§ 507. Priorities.
(a) The following expenses and claims have priority in the following order:
 (1) First, administrative expenses allowed under section 503(d) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.
 (2) Second, unsecured claims allowed under section 502(f) of this title.
 (3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—
 (A) earned by an individual within 90 days before the date of filing the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
 (B) to the extent of $2,000 for each such individual.

**8.** 11 U.S.C. § 503 provides:

§ 503. Allowance of administrative expenses.
(a) An entity may file a request for payment of an administrative expense.
(b) After notice and hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
 (1)(A) the actual and necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case
. . .

**9.** *In re W.T. Grant Co.*, 620 F.2d 319, 320–21 (2nd Cir.), *cert. denied*, 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980); *Straus–Duparquet, Inc. v. Local Union No. 3*, 386 F.2d 649, 650 (2nd Cir.1967); *In re Golden Distributions, Ltds.*, 134 B.R. 750, 763 (Bankr.S.D.N.Y.1991), *aff'd*, 152 B.R. 35, 37 (S.D.N.Y.1992); *In re Landmark Land Co. of Oklahoma, Inc.*, 136 B.R. 410, 413 (D.S.C.1992).

**10.** *In re Public Ledger*, 161 F.2d 762, 773 (3rd Cir.1947); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 953–55 (1st Cir.1976); *In re Health Maintenance Foundation*, 680 F.2d 619 (9th Cir.1982); *In re Rawson Food Services*, 67 B.R. 351, 353 (M.D.Fla.1986).

*also, In re Allegheny Intern'l, Inc.,* 118 B.R. 276 (Bankr.W.D.Pa.1990); *In re Roth American, Inc.,* 120 B.R. 356 (Bankr.M.D.Pa.1990).

The Salaried Employees argue that the "earned" analysis espoused in *In re Public Ledger* is inapplicable to the facts of this case. To support this proposition, the Salaried Employees cite to footnote 4 of *In re Mammoth Mart, Inc.,* 536 F.2d 950, 955 n. 4 (1st Cir.1976) and *In re Landmark Land Company of Oklahoma, Inc.,* 136 B.R. 410 (D.S.C.1992).

The Salaried Employees reliance on these two cases is tenuous at best. First, *In re Landmark* does not apply the law as it exists within this circuit. As such, it is not mandatory authority and this Court is reluctant to follow it. Second, the Salaried Employees interpretation of footnote 4 in *In re Mammoth Mart* is misplaced. In *In re Mammoth Mart,* several employees who were terminated immediately after the filing of a Chapter 11 bankruptcy sought a determination of the priority of their severance pay claims. The Court of Appeals for the First Circuit expressly followed *In re Public Ledger* and stated that: "... whether a claim for severance pay ... will be entitled to § 64(a)(1) priority will depend upon the extent to which the consideration supporting the claim was supplied during the reorganization." *In re Mammoth Mart,* 536 F.2d at 955.

The First Circuit concluded that no portion of each terminated employee's claim would be accorded priority treatment because no part of his or her claim arose from services performed for the debtor-in-possession. In footnote 4, the court further noted that:

> The result would be different if the debtor-in-possession had, to induce the employees to remain on the job, promised them that, if discharged, they would receive severance pay based on the prior practice. Then the consideration supporting appellants' claims would be the services performed subsequent to the debtor-in-possession's promise.

*Id.* at 955 n. 4. The Salaried Committee argue that this footnote applies to the case at bar and entitles the terminated Salaried Employees to an administrative priority claim.

Nowhere in footnote 4 does the First Circuit Court of Appeals state that the entire severance claim would be entitled to priority treatment if such an inducement had existed. The court only states in dicta that the "result would be different." This conclusion is vague and is too inconclusive, therefore, this Court does not find it precedential. The payment of severance benefits based on an employee's length of service (as in this case) must be apportioned. The portion which was earned postpetition may be entitled to priority treatment as an administrative expense pursuant to § 507(a)(1). The remainder of an employee's severance pay, which is not so "earned," is to be treated as a general unsecured claim. *In re Public Ledger,* 161 F.2d at 773–74; *In re Jeannette,* 118 B.R. 327; *In re Allegheny Intern'l,* 118 B.R. at 278–79; *In re Roth American, Inc.,* 975 F.2d 949 (3rd Cir.1992).

Section 507 controls in this case because of the nature of the Salaried Employees' claims. The drafters of the Bankruptcy Code specifically singled out wages, including severance and vacation pay, in 11 U.S.C. § 507(a)(3). Therefore, the Salaried Employees that have been terminated were only entitled to a priority payment of no more than $2,000.00. Severance and vacation benefits earned postpetition are always a priority administrative expense under 11 U.S.C. § 503(b)(1)(A). However, as discussed above, the Third Circuit requires employees who "earn" such benefits based on the length of service may only receive an administrative priority expense for the proportionate postpetition amount.

 The Wage Order signed by this Court was drafted by the Debtor. The Wage Order was not considered fully by the parties. After careful reconsideration of the Wage Order, the Court determines that the Wage Order should have considered 11 U.S.C. § 507(a)(3), and creditors should have objected to it years ago. The Court finds it difficult at this stage of this particular bankruptcy case to undo what has already been done. In the years since that Wage Order was issued a great deal has occurred. Further, the Committee's plan of reorganization

is a "liquidating plan" and has been approved by the Court.

The Court is confident that considering the current job market and economy, most if not all of the terminated Salaried Employees have spent their respective severance and vacation benefits. It will also be expensive to recover a large number of small claims. Therefore, the Wage Order will be not be modified by the Court, but rather, vacated as of the date of this action. Furthermore, the Committee is denied authority to bring suit in the name of the Debtor against each former Salaried Employee in order to recover such amounts unless it can prove the salaried employees were insiders.

## III. *CONCLUSION*

The Committee's motion for an order (i) modifying the first day interlocutory wage order insofar as it relates to severance benefits and vacation pay and (ii) authorizing the Committee to bring suit in the name of the Debtor to recover excess severance payments is denied. The Court concludes that: 1) the Wage Order was a final order; 2) the legal relationship between the Debtor and the terminated Salaried Employees was not an "executory contract" as the term is used within the Bankruptcy Code; and 3) that the Court should not modify the Wage Order pursuant to FRCP 60. In addition, the Court concludes that modification and recovery of the excess payments is not warranted because laches applies to the Committee's untimely attention to this matter. Severance and vacation benefits paid by the Debtor to the terminated Salaried Employees are subject to prioritization under 11 U.S.C. § 507. Therefore, this Court vacates the Wage Order as of March 10, 1993, the date this matter was filed.