**In re George E. YOBE and Shirley M. Yobe, his wife, Debtors.**

**CARLTON REAL ESTATE, Movant,**

v.

**Bernhard SCHAFFLER, Trustee;**

**George E. Yobe and Shirley M. Yobe, Debtors; and**

**McDowell National Bank, Respondents.**

**Bankruptcy No. 83–560.
Motion No. 87–454.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 2, 1987.

---

4. *In re Brill,* 52 F.2d 636 (S.D.N.Y.1931), *aff'd.,* 52 F.2d 639 (2d Cir.1931).

5. King, *supra,* pp 416–25.

6. U.S. Const. amend. V.

Robert O. Lampl, Pittsburgh, Pa., for Carlton Real Estate.

Robert L. Murphy, Papernick & Gefsky, Pittsburgh, Pa., for Merrill Lynch Realty Florida, Inc.

T. Lawrence Palmer, Wexford, Pa., for debtors.

P. Raymond Bartholomew, Cusick, Madden, Joyce and McKay, Sharon, Pa., for McDowell Nat. Bank.

**432**

Bernhard Schaffler, Schaffler & Böhm, Pittsburgh, Pa., trustee, for debtors.

Robert S. Bernstein, Bernstein and Bernstein, Pittsburgh, Pa., trustee, for Yobe Elec., Inc.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court are motions by Merrill Lynch Realty Florida, Inc. (hereinafter "Merrill Lynch") and Carlton Real Estate (hereinafter "Carlton") for commissions resulting from the sale of property located at 551 South Barfield Drive, Marco Island, Collier County, Florida (hereinafter the "Marco Island Property").

Merrill Lynch asserts a right to said commission in conjunction with an Order of this Court dated July 25, 1984, approving its employment as a broker, and delineating the terms of same. Carlton asserts entitlement, stating it was the "selling agent" in the transaction.

The Trustee and the two secured creditors, McDowell National Bank (hereinafter "McDowell") and First National Bank & Trust Company of Naples (hereinafter "Naples") object to the payment of either commission, claiming that:

1) Carlton did not actually procure the sale; therefore, Carlton is not a selling agent as delineated within the July 25, 1984 Court Order; and

2) Merrill Lynch had lost its period of exclusivity and could only claim a commission on a sale brought by a selling agent, which did not occur.

The various parties have thoroughly argued and briefed the issues in this case. Based upon same, and this Court's further research, we find that neither Merrill Lynch nor Carlton is entitled to a commission on the sale of the Marco Island Property. However, Ms. Margie Cargle, the broker and branch manager of Merrill Lynch, is entitled to a reimbursement of $1,200.00, her estimated out-of-pocket expenses incurred while providing a benefit to the estate.

## FACTS

In the Summer of 1984, Mr. Yobe, as the Debtor-In-Possession, approached Merrill Lynch to market the Marco Island Property. He sought and received court authorization for same. Paragraph 8(e) of the Order states:

(e) Provided that Merrill Lynch *actively continues to market and attempt to sell* the Barfield Drive property, Merrill Lynch is guaranteed a commission on the sale of the Barfield Drive property, even if the buyer is *obtained by a selling agent other than Merrill Lynch,* as follows:

(i) In the event that the Barfield Drive property is sold sometime during the period beginning November 15, 1984 and ending March 1, 1985, Merrill Lynch will be eligible to collect a commission in the amount of two percent (2%) of the gross sales price, with a minimum of $30,000.00.

(ii) In the event that the Barfield Drive property is sold during the period beginning March 1, 1985 and ending on June 15, 1985, Merrill Lynch will be eligible to collect a commission of *one percent (1%) of the gross* sales price, with a *minimum of $30,000.00.* (emphasis added).

This Order was entered on July 25, 1984, but Ms. Cargle testified that she did not receive a copy of same from Mr. Yobe until September 1984. She then began her marketing efforts, which included the preparation of a brochure wherein the Marco Island Property was featured along with several other properties.

The realty, including all furnishings, was listed at $5.2 million. During this same time period, this Court ordered the appointment of a trustee in this case. In October of 1984, this Chapter 11 reorganization was converted to a Chapter 7 liquidation, and the trustee continued in place. On December 14, 1984, an auction was held, wherein an offer was made to purchase the entire property for $1.25 million. Said offer was rejected by the trustee as being inadequate. Thereafter, the auction

went forward in order to sell the contents of the property. Ms. Cargle testified that she attended this auction, taking with her several stacks of her brochures. She stated that she gave a stack each to the trustee and auctioneer.

Ms. Cargle testified generally, and without specificity, that she continued her efforts to sell the real estate, still listing the property for sale at $5.2 million. When questioned at trial about the lack of price reduction given the obvious change in the property value, Ms. Cargle testified that although the value had decreased considerably, she did not seek authorization to reduce the asking price.

In February of 1985, as the realty had not sold, McDowell retrieved the keys to the property, and removed the Merrill Lynch sign from the premises. On March 6, 1985, upon the motion of the trustee, the real estate was sold in open court. Ms. Cargle testified that one of her clients came to Pittsburgh for the auction. The record shows that said client did in fact submit the required deposit in order to become a qualified bidder; however, he did not enter the bidding during the auction itself. The final bid for the Marco Island Property was $850,000.00, offered by Sunland Properties, Incorporated (hereinafter "Sunland"), by and through its attorney, Robert O. Lampl.

At said hearing on March 6, 1985, the following colloquy occurred by and between counsel to the successful bidder, Sunland (who now coincidentally represents Carlton) and the Court:

Mr. Lampl: Well, just to state my—I represent a bidder, Sunland Properties, Inc., a Florida Corporation. They have come in to participate through a real estate broker called Carlton Real Estate. I don't know how that interplays with the listing broker. I assume these issues just get preserved.

The Court: My. Lampl, I will not allow a finder's fee.

Mr. Lampl: I understand that.

The Court: Otherwise, every sale I have I will have half of Pittsburgh in here sitting beside someone saying they brought this buyer. I have been down that road. But those are matters we'll discuss later.

Mr. Lampl: Fine.

Ms. Cargle testified that shortly after the sale, Mr. Hakeem, of Carlton, visited her offices, identifying himself as the purchaser of the Marco Island Property. This was the first contact she had ever had with Mr. Hakeem, Carlton or Sunland. At his request, Ms. Cargle provided Mr. Hakeem with additional floor plans and appraisals, and other information about the property on Marco Island.

Due to an illness, Mr. Hakeem was not available to testify at trial. In his stead, counsel to the realtors, who are presently acting in concert, offered the testimony of Joanne Korack. It is noteworthy to mention that said individual has been in the employ of Carlton only since January of 1986, which date is long after all of the activity in question had taken place. She testified that her only ability to provide information was from letters and documents in the file in her possession, and that Mr. Hakeem, who is presently in Florida, had many of his records with him in Florida. Ms. Korack was unable to produce any credible testimony or documentation indicating any contact with Merrill Lynch by Carlton, Sunland or Mr. Hakeem prior to the sale brought by the trustee in open court on March 6, 1985.

## ANALYSIS

In order for Merrill Lynch to receive a commission for this sale, this Court must find that Carlton was in fact a selling agent, thereby also permitting Carlton to receive a portion of the commission. Under Pennsylvania law, a broker cannot recover a commission, even if he brought the buyer and seller together, unless he proves he had an employment contract, express or implied, oral or written, between himself and the buyer or seller, or an acceptance or ratification of his acts by the buyer or seller. *Christo v. Ramada Inns, Inc.*, 609 F.2d 1058 (3rd Cir.1979); *Axilbund v. McAllister*, 407 Pa. 46, 180 A.2d 244 (1962);

*Christo v. Brittany, Inc.*, 312 Pa.Super. 255, 458 A.2d 946 (1983).

■ Ms. Korack was unable to provide the Court with any evidence of an employment contract between Carlton and Sunland. All references made by Ms. Korack were to implied and/or oral contracts between the agency and the purchaser. However, as Ms. Korack was not an employee of Carlton until January of 1986, more than nine (9) months after the sale of the property in this Court, her testimony as to the implied or oral nature of an employment contract for the purchase of the Marco Island Property is of little or no value to this determination. The only parties who might have been able to supply this Court with evidence as to implied and/or oral contracts for employment, Mr. Hakeem of Carlton and/or a representative of Sunland, were not produced at trial, nor was either such party offered for deposition prior to the trial. Accordingly, based upon the evidence offered at trial, this Court determines and finds as a fact, that there was no employment contract between Sunland and Carlton. Therefore, there is insufficient evidence upon which to make a finding that Carlton was a "selling agent" in this case.

■ At best, it would appear that Carlton could be classified as a "finder". It has been the policy of this Court for many, many years, to disallow a finder's fee, and this Court believes it would be an unwise policy to begin at this juncture. As this Court stated at the March 6, 1985 hearing, if we were to so allow, every purchaser in every sale in this Court would be accompanied by a broker claiming to be a finder and entitled to a commission. This is in direct conflict with the policy and intent of the Bankruptcy Code which requires that professionals to be employed by the estate must be approved prior to their engagement and, must also have their fees approved after the completion of their employment.

Alternatively, Carlton claims entitlement to a fee by requesting appointment as a real estate agent nunc pro tunc. The Third Circuit has spoken to this question directly in the case of *Matter of Arkansas Company, Inc.*, 798 F.2d 645 (3rd Cir.1986). This Court has also spoken to that issue in *Matter of F/S Airlease II, Inc.*, 59 B.R. 769 (Bankr.W.D.Pa.1986) and follows the same analysis as that offered in the *Arkansas* case.

In reviewing an application for employment as counsel to the Unsecured Creditors' Committee nunc pro tunc, the Third Circuit held that a Bankruptcy Court may grant retroactive approval for the employment of a professional person in a case, if it finds "that it *would have granted a prior approval, ...* and that the services performed were necessary under the circumstances." *Arkansas, supra,* at 650 (emphasis added).

■ Given the facts of this case, we find that had Carlton submitted an application for employment prior to acting in that capacity, this Court would not have approved it. We have no basis upon which to find that this applicant is both qualified and without an adverse interest. In addition, it would be especially unusual for two separate real estate agencies to claim "listing agent" status for one particular piece of property. As Merrill Lynch had already been approved by this Court as the listing and marketing agent, we find that Carlton's application would have been denied even if timely.

■ Having so determined, it is unnecessary for us to reach the second aspect of the *Arkansas* decision, that being whether extraordinary circumstances existed allowing the nunc pro tunc application to be granted. Even so, we believe that the broker in this case, Carlton, has not met the required level of extraordinary circumstances to permit nunc pro tunc appointment. The *Arkansas* case held that the approval of retroactive employment should be limited to cases where the delay in seeking the approval was due to a hardship beyond the professional's control. The Third Circuit referred to the case of *In re Freehold Music Center*, 49 B.R. 293 (Bankr.D.N.J.1985), wherein the court held that accountants who had performed work

at the debtor's request were entitled to employment authorization nunc pro tunc. In that case however, the testimony indicated that said accountants had been advised by the debtor's counsel that an application would be prepared and submitted to the Bankruptcy Court.

Similarly, in *Matter of F/S Airlease, II, supra,* this Court found that nunc pro tunc approval of a leasing agent was appropriate. However, in that case, testimony showed that the agent had in fact requested assurance several times from the debtor that its services would be permitted, and that debtor's officers stated that his appointment would be acknowledged by this Court.

The case at bar bears no element of unusual circumstances. We have no testimony indicating any discussion of a request for appointment as a professional in this case by and between Carlton and its well-seasoned bankruptcy counsel. To the contrary, Judge Gibson clearly advised at the March 6, 1985 sale that no such authorization would be forthcoming. Additionally, there is no indication that Carlton's counsel raised an argument of nunc pro tunc appointment until he did so in his brief, filed April 6, 1987, more than two (2) years after the sale in question. In that brief, Carlton's counsel alleges that, "Carlton used the materials of the court-approved broker."

This is especially suspect, given that two years earlier, Carlton denied any and all connection with Merrill Lynch, as can be seen from the following paragraphs alleging commission rights by Merrill Lynch and the responses of Carlton.

Merrill Lynch: 12. The Movant believes, and therefore avers, that the efforts of Merrill Lynch Realty Florida, Incorporated, in marketing and advertising the subject property were instrumental in making Carlton Real Estate aware of the subject property and ultimately in obtaining a purchaser for the property.

Carlton: The averments in Paragraph 12 are denied. There was no written or verbal communication between Carlton Real Estate and Merrill Lynch Realty Florida, Incorporated. Carlton Real Estate acquired its information from Grant Street Enterprises, liquidator of the personalty in the estate. Carlton Real Estate was never aware of Merrill Lynch Realty Florida, Incorporated's participation until the time of sale.

Merrill Lynch: 13. (Merrill Lynch made no Paragraph 13 averments)

Carlton: The averments of application Paragraph 13 are denied. Carlton Real Estate was never cognizant of Merrill Lynch Florida, Incorporated's marketing, nor did Carlton Real Estate benefit from Merrill Lynch's efforts.

It appears to this Court that Carlton states what is in Carlton's best interest at any given time. At the time of Carlton's above-quoted response, it was in an adversarial posture with Merrill Lynch. However, at the time of the hearing in April of 1987 and subsequent thereto, Carlton and Merrill Lynch had struck an arrangement to share any commission offered by this Court. It would appear that, as they are now allies, Carlton will state that it relied on Merrill Lynch and the materials produced thereby to bootstrap its position. Unfortunately, this kind of maneuvering is anything but extraordinary in the *"Arkansas"* sense, and therefore, does not qualify as a circumstance sufficient to create a need for nunc pro tunc appointment.

In its brief, Carlton also states "real estate is rarely sold without the use of brokers. Creating an atmosphere of insecurity regarding the payment of commissions may have an adverse effect on all estate sales and will sanctify form over substance." While it may be true that real estate is rarely purchased or sold without the assistance of an agent or broker, often only one real estate agent is needed. It is clear from the Third Circuit decision in *Arkansas,* and this Court's decision in *F/S Airlease,* that the flexibility allowing nunc pro tunc appointments is an overt attempt to avoid the application of form over substance. To permit Carlton's request would actually *exalt* form over substance, as well as fiction over truth. The activities of a

chameleon will not be condoned in this Court.

Having found no basis upon which to consider Carlton a selling agent in this case, we find that it is not entitled to a commission from the estate for services rendered to Sunland or any other party herein.

Having so held, we must further find that Merrill Lynch is not entitled to a commission either. As stated previously, Merrill Lynch was appointed by this Court as the authorized real estate agent to list and market the Marco Island Property. The Agreement for Employment as Real Estate Broker grants Merrill Lynch the *exclusive right* to market the property up through and until November 15, 1984; if it continued its sale efforts, it was entitled to *non-exclusive employment* until June 15, 1985. Merrill Lynch would be entitled to a commission totaling a *minimum of $30,-000.* based on its non-exclusive employment, *as long as the property was sold either by Merrill Lynch or by another selling agent.* The property in question was sold in open court on March 6, 1985. The Motion To Sell was brought by the trustee based upon a bid of $650,000.00 by a third party representing a third party corporation. Given these facts, it is clear that Merrill Lynch was not the procuring agent in the eventual sale; nor was Carlton the selling agent. Therefore, we find that Merrill Lynch is not entitled to a commission.

Testimony elicited at trial indicated that Ms. Cargle, of Merrill Lynch, was required to invest $1,200.00 of her personal funds toward the marketing and listing of this property for sale. She stated that since she, individually, was the listing agent of record, it was the Merrill Lynch policy for her to pay these "up front costs" and be reimbursed at a later date. The brochures produced by and for Ms. Cargle were used by the estate to solicit possible purchasers, and they were offered to the trustee and the auctioneer in December of 1984. Thereafter, when McDowell came in and took over the property, it also made use of the brochures prepared by and for Ms. Cargle. It is this Court's opinion that the marketing expenses incurred by Ms. Cargle were of a benefit to the estate, and therefore, this Court will order that Ms. Cargle will be reimbursed for the $1,200.00 in expenses that she incurred as a result of being the listing agent for the Marco Island Property.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 2nd day of June, 1987, based upon the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that the commission fees requested by Carlton Real Estate and Merrill Lynch Realty Florida, Incorporated for the sale of the Marco Island Property be and are DENIED.

IT IS FURTHER ORDERED, that the out-of-pocket expenses incurred by Ms. Margie Cargle, listing agent for Merrill Lynch for the sale of the Marco Island Property, be and are GRANTED in the amount of $1,200.00.