**In re W/B ASSOCIATES, Debtors.**

**Bankruptcy No. 98–21139 JKF.**

United States Bankruptcy Court,
W.D. Pennsylvania,
Pittsburgh Division.

Nov. 5, 1998.

Robert O. Lampl, Pittsburgh, PA, pro se.

Olivia J. Lorenzo, Pittsburgh, PA, for Debtor.

George Cheever, Pittsburgh, PA, for Baldwin and Associates and W/B Funding.

Aubrey Gladstone, Pittsburgh, PA, pro se.

Philip J. Uher, Pittsburgh, PA, for RTA Group.

Edward C. Leckey, Pittsburgh, PA, pro se.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

The sale of a commercial building in Wilkes–Barre, Pennsylvania, the only asset of this estate, precipitated Robert O. Lampl's ("Lampl") Motion for Allowance of Administrative Expense Pursuant to 11 U.S.C. Sec-

tion 503 or, in the Alternative, Motion for Approval Under 11 U.S.C. Section 330, *Nunc Pro Tunc,* and the Supplement thereto by which Lampl seeks payment under § 506(c). Numerous objections have been filed to the Motion. We find that, because prior court approval to serve as a professional representing the debtor-in-possession is required by 11 U.S.C. § 327 and Lampl failed to obtain such approval, he is not entitled to be paid a fee from this estate. Further, his claim does not qualify as an administrative expense under § 503(b)[2], nor is he entitled to be paid from the secured creditor's asset under § 506(c).

Section 330 of the Bankruptcy Code allows the court to authorize payment to professionals employed under § 327. Section 327 requires court approval of the employment of professionals representing the interests of the estate. The Court of Appeals for the Third Circuit has held that, absent extraordinary circumstances, counsel who has not been appointed cannot be paid. In *In re F/S Airlease II, Inc. v. Simon,* 844 F.2d 99 (3d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988), the court refused to permit payment to a broker who had not obtained court approval even though all parties and the bankruptcy judge were aware that the broker was working for the estate and had produced a buyer for a major asset. In *Matter of Arkansas Co., Inc.,* 798 F.2d 645 (3d Cir.1986), the court expressed the need for court approval and set out strict standards for *nunc pro tunc* approval. Retroactive approval of the employment of a professional is permissible only when the delay in seeking approval of appointment is beyond the professional's control. 798 F.2d at 649.

These cases have been the standard in this Circuit since 1986 and Lampl, an attorney who regularly practices in the bankruptcy courts in this Western District of Pennsylvania, is well aware of them. We note at the outset that Lampl did not serve as an attorney for the estate, a creditor, or the trustee

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. In his motion Lampl refers to § 503(a)(1) which was a misprint. At the hearing on the motion Lampl clarified that the § 503 claim was made under § 503(b).

in this case, nor did he act as a broker in the commonly understood sense of the term—i.e., one who markets the property and, while doing so, actively seeks interested buyers. Although he asserts this claim as a broker, his status is more that of a finder. He learned that the debtor had its commercial building for sale, discussed that fact with a client who was unrelated to the estate or parties, and brought that client to the sale. After competitive bidding against the initial offeror, Lampl's client outbid the initial offeror, became the successful bidder, and purchased the property.

At the sale hearing this court inquired of Lampl whether there was a broker's commission component to his client's bid. The following colloquy ensued:

> MR. LAMPL: The only broker that was in this case was me.
>
> THE COURT: All right.
>
> MR. LAMPL: I actively—and I not [sic] asking for a fee. . . .

Transcript of Sale Hearing, March 13, 1998, at 73.

■ Lampl now seeks compensation from this estate (as opposed to seeking it from his client) for producing the successful bidder. Lampl claims entitlement to a fee of $36,000 as a broker for the estate based on a claimed six percent commission on the difference between the original bid ($1,000,000) and the successful bid ($1,600,000) presented by his client.[3] He asserts that his fee is an administrative expense of preserving the estate under § 503(b)(1) and for making a substantial contribution under § 503(b)(3)(D). He also asserts that extraordinary circumstances exist which permit approval of his employment as a broker *nunc pro tunc*. Alternatively he argues that he is entitled to a fee from the lienholders pursuant to 11 U.S.C. § 506(c). Lampl is entitled to a fee on none of these bases. Lampl cannot succeed as a broker for the estate under § 503(b)(1) because he was not appointed as broker for the estate.[4] No extraordinary circumstances have been recited that would permit *nunc pro tunc* appointment and payment under *F/S Airlease* or *Arkansas* and, in fact, he has not filed a motion pursuant to § 327 to be appointed *nunc pro tunc*.[5] In his motion, Lampl cites as extraordinary circumstances the fact that the sale was brought on an expedited basis, that he "stimulated the proposed sale interest" in the bidder

> shortly before the scheduled hearing which did not allow the Movant time to file a Motion for approval, . . . nor would the filing of such a motion been [sic] appropriate under the circumstances inasmuch as [the bidder] was merely a bidder at that point.[6] Further, the Movant avers that[ ] this Honorable Court[ ] will ordinarily approve real estate broker's finder's fees for realtors who represent successful bidders at sales in this Court.

Motion at ¶ 13. These arguments are not sufficient to meet the strictures of *Arkansas* for the following reasons:

■ (1) An expedited sale process in bankruptcy is not an "extraordinary" circumstance. In fact, expedited sales in bankruptcy are fairly frequent due to the exigencies of any particular case.[7]

---

3. The entity that served as the prepetition broker sought only a five percent commission.

4. Judge Markovitz of this court has ruled upon a similar issue in *In re Glosser Bros., Inc.*, 102 B.R. 38 (Bankr.W.D.Pa.1989), and concluded that not every professional who appears in the bankruptcy court is entitled to compensation from the estate. In that case he said:

> Section 327 of the Code provides the minimum requirements which must be met in order to qualify for appointment as a professional. . . . However, the mere fact that a professional satisfies the technical elements of § 327 does not mandate Court approval.
> *Id.* at 39.

5. His motion cites only § 330 but the "wherefore" clause asks that he be retained "as a broker/finder nunc pro tunc, under 11 U.S.C. Section 330. . . ." Construing this request under § 327 results in no different result.

6. Typically, brokers are approved before any bidders appear and express interest.

7. Although most expedited sales do not result in written opinions, see *In re Conroe Forge & Manufacturing Corp.*, 82 B.R. 781 (Bankr.W.D.Pa. 1988) (a delay in confirmation of the sale would have resulted in postponement of sale due to Wisconsin Frost Laws or loss of the sale; therefore, circumstances required confirmation of sale before a liquidating plan could be confirmed).

■ (2) The brief period between the time Lampl notified his client of the availability of this property and the date of the sale is irrelevant to Lampl's obligation under the Bankruptcy Code and Rules and case law to obtain court approval of employment if he intended to serve as a professional in the estate. The extraordinary circumstance to which *Arkansas* speaks is that beyond the professional's control which prevents the professional from promptly seeking approval of employment. 798 F.2d at 649. Nothing in this case prevented counsel from seeking appointment as a broker on an expedited basis if he was of the opinion that he would be entitled to broker status. What is more, he specifically declared at the sale hearing that he was *not* seeking brokering fees.

(3) His assertion that this court approves broker's fees for realtors is true only insofar as those brokers are properly approved by the court, a fact absent in this case.

■ (4) Lampl has waived any broker's fee to which he might have been entitled, at least from the assets of this estate, by virtue of his statement to the court during the sale that he was not seeking one.

■ Furthermore, Lampl is not entitled to payment of a fee as an administrative claim under § 503(b)(1) or (b)(3)(D) merely because he found a buyer and brought to the sale the entity which ultimately was successful. The very purpose of advertising and holding auction sales in bankruptcy is to attract interested bidders. Simply because a bidder is brought to a sale by counsel and ends up winning the bidding war does not entitle counsel to a broker's fee. *See, e.g., In re Yobe,* 74 B.R. 430, 434 (Bankr.W.D.Pa.1987) ("[i]f we were to so allow [finder's fees] every purchaser in every sale in this Court would be accompanied by a broker claiming to be a finder entitled to a commission"). Lampl cannot fare any better under § 503(b)(3)(D), even though his client paid $600,000 more for the property than the initial offeror proposed, because he did not represent a creditor, indenture trustee, equity security holders, or commit-

tee and, therefore, is not encompassed within this provision. His client, moreover, engaged in active, competitive bidding against the initial offeror whose bidding drove up the price. Thus, to the extent that the increased sales price evidences a "substantial contribution" to this case, the credit for it does not fall squarely on Lampl's shoulders.

■ Finally, Lampl is not entitled to a fee under § 506(c) because that section entitles only the trustee, which term includes the debtor-in-possession, to recover certain costs and expenses. Lampl is not, and does not represent, the debtor-in-possession, the trustee, or a creditor. Section 506(c) provides that

> [t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

The term "trustee" includes a debtor-in-possession by virtue of § 1107(a) which provides, in part, that "a debtor in possession shall have all the rights ... of a trustee serving in a case under this chapter." *See also In re Birdsboro Casting Corp.,* 69 B.R. 955, 958 (Bankr.E.D.Pa.1987) ("[u]tilizing both 11 U.S.C. § 1107(a) and the legislative history, ..., most courts have allowed debtors in possession to use § 506(c).") Further, in *In re McKeesport Steel Castings Company* 799 F.2d 91 (3d Cir.1986), the Court of Appeals made it clear that creditors might be entitled to act in lieu of a trustee for purposes of § 506(c) when the debtor-in-possession fails to do so. Lampl and his client, however, are not creditors of this estate and Lampl does not seek to recover costs and expenses that the estate incurred in preserving or disposing of collateral. Lampl has filed no evidence of incurring any costs or expenses in this regard. Therefore, he cannot recover against a secured creditor's collateral. Accordingly, Lampl must look to his client for whatever compensation to which he thinks he might be entitled.[8]

---

8. At the argument on this Motion, Lampl mentioned that his client has paid for some services performed on his behalf, including Lampl's participation in the closing.

An appropriate order will be entered.[9]

---

**9.** After this Memorandum Opinion was drafted, the court received a proposed order that would approve a "settlement" of Lampl's disputed administrative claim by authorizing a $10,000 payment by a secured creditor, Second Mortgage Partners, from funds held in escrow from the sale proceeds. No settlement agreement or motion to approve settlement has been filed. However, Second Mortgage Partners will receive at least $10,000 from that escrow pursuant to Debtor's confirmed Plan. Because this court concluded that there is no basis in law or in fact for Lampl's claim, the requested order cannot be entered.