In re W/B ASSOCIATES, Debtors.

W/B ASSOCIATES, Movants,

v.

MERICLE COMMERCIAL REAL
ESTATE GROUP, INC.,
Respondents.

Bankruptcy No. 98–21139 JKF.

United States Bankruptcy Court,
W.D. Pennsylvania.

Nov. 25, 1998.

Olivia J. Lorenzo, Pittsburgh, PA, for Debtor.

Robert C. Nowalis, Wilkes–Barre, PA, for Mericle Commercial Real Estate Group, Inc.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

Before the court is Debtor's objection to the claim of Mericle Commercial Real Estate Group, Inc. ("Mericle Commercial") for what Debtor characterizes as a real estate broker's commission. Mericle Commercial asserts that it seeks only damages for rejection of an executory contract, *i.e.*, a listing agreement between it and Debtor, and not a commission. We will address both grounds.

---

**1.** This Memorandum Opinion constitutes the court's findings of fact and conclusions of law.

On or about December 18, 1995, W/B Associates ("Debtor") entered into an exclusive listing agreement with Mericle Commercial which gave Mericle Commercial the exclusive right to sell or exchange real property located at 20 North Pennsylvania Avenue in Wilkes Barre, Pennsylvania.

The original listing agreement ran for twelve months commencing on December 15, 1995. A year after the initial term expired and on December 19, 1996, the parties agreed to an "extension" of the agency until June 14, 1997. On June 21, 1997 another extension was entered through May 21, 1998. (This case was filed on February 13, 1998.) The agreement required Mericle Commercial to market the property for a sale price of $2,500,000. Mericle Commercial found no buyers, even though the building was rented to capacity or near capacity, GSA[2] was the major tenant, and the property generated sufficient cash flow to cover expenses and service debt. In late 1997, while the listing agreement was still in effect, the principal of Mericle Commercial, Robert Mericle, doing business as Mericle Properties, negotiated with W/B Associates to purchase the building himself for $1 million.[3] The liens against the property exceeded this price and, to effectuate a contingency of the sale for a prompt closing to provide the buyer with a tax benefit, the parties agreed that Debtor would file a bankruptcy in order to divest the liens and transfer clear title.

Debtor filed its Chapter 11 petition on February 13, 1998, and, pursuant to 11 U.S.C. § 363, filed the motion to sell the building on February 20, 1998. The offer was advertised and was subjected to higher and better bids. On March 13, 1998, a sale hearing was conducted and a third party was the successful bidder at $1.6 million. Mericle Commercial did not procure the successful bidder.[4]

Even though Mericle Commercial was the listing and selling agent entitled to a five percent commission on sale pursuant to the listing agreement,[5] and even though its related entity, Mericle Properties, was the only potential buyer Mericle Commercial procured, the agreement of sale between Debtor and Mericle Properties provided for a $100,-000 "topping fee" in the event that another purchaser won the bid. The court reduced the "topping fee" to $30,000 at the sale hearing, a sum which, for the reasons expressed on the record at the hearing, the court determined was sufficient to compensate the original offeror for its time and expense in inspecting and offering to purchase the property. During the course of these events, Mericle Commercial never sought appointment under 11 U.S.C. § 327 as a broker representing the estate.[6]

Notwithstanding the foregoing, Mericle Commercial filed a claim as an unsecured creditor of the estate, on the theory that the listing agreement was an executory contract between it and Debtor. Mericle Commercial claims that because the listing agreement was not assumed by Debtor, it is deemed rejected[7] and, therefore, Mericle Commer-

2. GSA (General Services Administration) is an agency of the federal government.

3. Robert Mericle, a developer and realtor in the Wilkes Barre area (Transcript of sale hearing, March 13, 1998, p. 6, lines 15–25; p. 61, lines 23–25), controls both Mericle Commercial and Mericle Properties.

4. Counsel for the successful bidder represented to the court at the sale hearing that his client did not act through or with Mericle Commercial's assistance. He stated that the only broker involved with the successful bidder was himself and he was not seeking a fee.

5. The original commission was six percent. By the terms of the listing agreement, the commission was reduced to five percent if the sale occurred after the first six months of listing.

6. Mericle Commercial has not applied for appointment *nunc pro tunc*. However, given the relationship between Mericle Commercial and Robert Mericle d/b/a as Mericle Properties, it is doubtful that Mericle Commercial could be appointed as a broker at all, inasmuch as it is not disinterested under 11 U.S.C. § 327(a). *See* 11 U.S.C. § 101(14). Furthermore, its disincentive to market the property at a higher price than that offered by its affiliate runs directly contrary to what would have been its fiduciary duty to obtain the highest and best price if it had been appointed to represent the estate.

7. Inasmuch as this is a chapter 11, Debtor could have assumed or rejected the listing agreement, assuming it was executory on the date the bankruptcy was filed, at any time prior to confirmation of the chapter 11 plan. 11 U.S.C. § 1123(b)(2), § 365. The plan was confirmed.

cial is entitled to rejection damages of $80,-000. This sum represents the same five percent commission on the entire $1,600,000 purchase price that it would have claimed had it (1) been approved as the estate's broker and (2) brought in the successful bidder.[8]

■ Mericle Commercial never sought court approval of its appointment as a broker for the estate and was never appointed as broker by the court. Unless the employment of a professional serving the estate is approved by the court, that professional is not entitled to compensation from the estate. 11 U.S.C. §§ 327, 330; *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99 (3d Cir.), *cert. denied* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *Matter of Arkansas Company, Inc.*, 798 F.2d 645 (3d Cir.1986).

■ Upon commencement of the bankruptcy case, Debtor became a debtor-in-possession and its asset became property of its estate. Only the debtor-in-possession could list or offer the asset for sale, with court approval.[9] The provision in the exclusive listing agreement for payment of a commission could not be honored in the bankruptcy case absent court approval of Mericle Commercial's retention as the estate's broker. This did not occur. Furthermore, Mericle Commercial did not procure the successful bidder. Therefore, it was not entitled to payment of a commission. *See In re Glassmere Castings Company*, 95 B.R. 389 (Bankr.W.D.Pa.1989); *In re Yobe*, 74 B.R. 430 (Bankr.W.D.Pa.1987).

■ Mericle Commercial asserts damages for rejection of its listing agreement with Debtor and Debtor does not dispute Mericle Commercial's claim that the listing agreement was executory. However, we find that the listing agreement was not executory and, therefore, Mericle Commercial's claim cannot be sustained.

Rejection damages arise only upon rejection of an executory contract. 11 U.S.C. § 365. There was no executory contract in existence on the date this bankruptcy was commenced. The purpose of the listing agreement was to bring a ready, willing, and able buyer. *In re Murtishi*, 55 B.R. 564, 569 (Bankr.N.D.Ill.1985); *In re Godwin Bevers Co., Inc.*, 575 F.2d 805 (10th Cir.1978). This purpose was accomplished prepetition.

■ In the Third Circuit, to be executory, a contract is one

> under which the obligations of both the bankrupt and the other party remain so far unperformed that failure of either to complete performance would constitute a material breach excusing performance of the other.

*Counties Contracting and Construction Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1060 (3d Cir.1988) (utilizing the Vernon Countryman definition of "executory contract"). The parties agree that Mericle Commercial brought in a prospective purchaser and a sales agreement was signed before the bankruptcy was filed. This satisfied Mericle Commercial's obligation under the listing agreement. The only remaining obligation prepetition under the listing agreement was Debtor's to pay a commission. When the only performance remaining under a contract is the payment of money, the contract is not executory. *See In re U.S. Metalsource Corp.*, 163 B.R. 260, 269 (Bankr.W.D.Pa. 1993).

The facts of this case do not establish that any significant performance was owed by either party to the listing agreement as of the filing date of the bankruptcy. Mericle Commercial had substantially completed its performance under the exclusive listing agreement prepetition and the contract was not executory on the date of filing. Accordingly, there was nothing left for Debtor to assume or reject.[10]

---

8. Debtor contends that Mericle Commercial is entitled to $50,000 only, the commission it would have earned if the prospective buyer it procured had been the successful buyer. However, under *In re Glassmere Castings Company*, 95 B.R. 389 (Bankr.W.D.Pa.1989), and *In re Yobe*, 74 B.R. 430 (Bankr.W.D.Pa.1987), Mericle Commercial is not entitled to a commission because it did not bring the successful bidder.

9. The sale of its only asset was not in the ordinary course of Debtor's business and, therefore, required court authorization.

10. We also note that the listing agreement does not provide for a commission to Mericle Commercial in the event that the buyer was an entity procured by neither Mericle Commercial nor Debtor. Even if the agreement had so provided,

In order for Mericle Commercial to have a basis for a claim of rejection damages, the prepetition listing agreement would had to have been executory when the bankruptcy was filed. The contract was not executory on the date of filing. Accordingly Mericle Commercial is not entitled to either a commission or rejection damages.

Mericle Commercial did not bring the successful bidder and is therefore not entitled to a commis-

sion. *See, e.g., In re Yobe, supra.*